STATE OF INDIANA ON THE RELATION OF ANTHONY G. KĪRITSIS v. THE MARION PROBATE COURT AND THE HONORABLE VICTOR S. PFAU, JUDGE.

[No. 678S108. Filed November 8, 1978.]

*J. Richard Kiefer,* of Indianapolis, for relator.

*Theodore L. Sendak,* Attorney General, *Michael Schaefer,* Deputy Attorney General, for respondent.

GIVAN, C.J.—On November 18, 1977, the Superintendent of LaRue D. Carter Memorial Hospital filed in the Marion Probate Court a petition for the involuntary commitment of Anthony G. Kiritsis. On the same day he also filed a motion for an order permitting a physical and mental examination of Mr. Kiritsis. The respondent court granted the motion on November 23, 1977, and set the commitment hearing for December 15, 1977. On December 2, 1977, the Superintendent filed a petition for an order to show cause why Mr. Kiritsis should not be held in contempt of court for failure to cooperate with the examining psychiatrists. A hearing on said petition was held on December 8, 1977, and on the following day the Marion Probate Court adjudged Kiritsis in contempt of court, finding that he willfully disobeyed an order of the court by refusing to permit the psychiatrists to conduct a mental examination.

Relator then petitioned this Court for a writ of mandate and prohibition, asking this Court to order the respondent

to recognize relator's constitutional right to remain silent and therefore to discharge him from custody. Oral argument was held and on March 15, 1978, this Court denied issuance of a writ. For the reasons herein stated, we now deny the application for a permanent writ.

Original actions are viewed with extreme disfavor and writs will not be issued unless there is a clear and obvious emergency where the failure of this Court to act will result in substantial injustice. *State ex rel. Gibson General Hospital* v. *Warrick Cir. Ct.*, (1966) 247 Ind. 240, 214 N.E.2d 655. Nor will this Court issue a writ to prevent an individual from being subjected to the contempt power of a trial court so long as that court had jurisdiction to act. *State ex rel. Ely* v. *Allen Cir. Ct.*, (1973) 261 Ind. 419, 304 N.E.2d 777, *interpreting, State ex rel. Roberts* v. *Morgan Cir. Ct.*, (1968) 249 Ind. 649, 232 N.E.2d 871. In the case at bar the Marion Probate Court, pursuant to IC § 16-14-9.1-5 [Burns Supp. 1978], has both subject matter and personal jurisdiction over the relator. An original action to prevent the contempt power from being used is therefore impermissible.

Relator cites *State ex rel. Rose* v. *Hoffman,* (1949) 227 Ind. 256, 85 N.E.2d 486, for the proposition that a trial court may be purged of jurisdiction to act when it denies a person a fundamental constitutional right. He then argues he has a fundamental right to avoid self-incrimination in any proceeding which may result in the deprivation of his liberty.

The United States Supreme Court has not ruled on this precise question, having expressly reserved ruling in *McNeil* v. *Director, Patuxent Institution,* (1972) 407 U.S. 245, 92 S. Ct. 2083, 32 L.Ed.2d 719. However, in the case of *In re Gault,* (1967) 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, cited by relator, the Court held that a juvenile delinquency proceeding, although denominated as civil, could lead to a deprivation of liberty and therefore the privilege against self-incrimination was fully applicable.

Notwithstanding the *Gault* holding, the fact that a proceeding may result in the deprivation of liberty does not automatically invoke the protection of the Fifth Amendment, applicable to the states through the due process clause of the Fourteenth Amendment. As noted by the Court in *Williams* v. *Director, Patuxent Institution*, (1975) 276 Md. 272, 347 A.2d 179, *cert. denied,* 425 U.S. 976 (1976), it is only where a proceeding seeks to impose a criminal or quasi-criminal sanction upon an individual for a violation of its law that a proceeding can properly be labeled "criminal." For purposes of the Fifth Amendment, the United States Supreme Court in *Gault* held the privilege applicable because the juvenile delinquency proceeding was criminal in that it may have subjected the juvenile to a sanction criminal in nature; that is, the incarceration in a state institution for juveniles.

In the case at bar, however, the civil commitment statute, IC § 16-14-9.1-10 [Burns Supp. 1978], does not seek to impose a criminal or quasi-criminal sanction upon relator for violation of any statute. Rather, the purpose of a civil commitment proceeding is merely to inquire into the mental and emotional status of the individual to determine if he is mentally ill, either gravely disabled or dangerous and in need of treatment. Hence, the privilege against self-incrimination is inapplicable. *French* v. *Blackburn,* (M.D.N.C. 1977) 428 F.Supp. 1351; *Williams* v. *Director, Patuxent Institution, supra.*

In deciding this case we are not unmindful of *Haskett* v. *State,* (1970) 255 Ind. 206, 263 N.E.2d 529, cited by relator. In that case a majority of this Court held a statute unconstitutional where it compelled a person charged with being a criminal sexual psychopath to answer questions propounded by examining physicians under penalty of contempt. The Court found that the proceeding was indeed a criminal proceeding and therefore that the privilege against self-incrimination applied. Here, however, it is clear that the

civil commitment proceeding, though it may result in a deprivation of a person's liberty, is not a criminal proceeding within the meaning of the Fifth Amendment. Hence, *Haskett* does not control.

We are aware of the cases contrary to our position which hold the privilege against self-incrimination applicable to civil commitment proceedings. See *Suzuki* v. *Quisenberry*, (D.Haw. 1976) 411 F.Supp. 1113; *Lynch* v. *Baxley*, (M.D. Alab. 1974) 386 F.Supp. 378; *Lessard* v. *Schmidt*, (E.D. Wis. 1972) 349 F.Supp. 1078. Counsel for relator has made a cogent argument both in oral argument and in his brief that these holdings should apply. However, we are persuaded that these cases completely disregard the legitimate interest of the State in civil commitment proceedings. As put by the Texas Court of Civil Appeals in *Moss* v. *State*, (Tex. 1976), 539 S.W.2d 936, a balancing test should be used with the interest of the individual in maintaining his liberty being weighed against the interest of the state in providing treatment for mentally ill persons and in protecting its citizens against injury from such persons. In our view, the balance weighs heavily in the State's favor. The legitimate objectives of the statute and the interests of the State would be wholly frustrated were individuals permitted to claim the privilege in civil commitment proceedings. The State could commit virtually no one to its mental institutions.

Accordingly, we hold that the privilege against self-incrimination has no applicability in civil commitment proceedings under our statute. Relator was bound to comply with the court order directing him to submit to psychiatric examination. His failure to do so subjected him to the contempt power of the court. So long as the trial court has held a hearing on the contempt charge and determined that relator's conduct was willful and not a manifestation of mental illness for which he was not responsible, the court has complied with the requirements of due process of law. See *McNeil* v. *Director, Patuxent Insti-*

*tution, supra.* Here, the trial court conducted a hearing and expressly found that relator's conduct was a willful disobedience of the court order. Thus, there has been no abridgment of a fundamental constitutional right. We hold that an action for a writ of mandate and prohibition does not lie.

Relator's second contention is that the trial court failed to conduct a hearing on his commitment. This contention has no merit. The trial court had scheduled a hearing on relator's commitment. However, before that date arrived relator violated a court order and was adjudged in contempt. To our knowledge, relator has not been committed but is in custody under the contempt citation. Relator has not shown that he has been committed without a hearing and he therefore can obtain no relief from this Court.

The application for a permanent writ of mandate and prohibition is hereby denied.

Hunter and Prentice, JJ., concur; DeBruler, J., concurs in result; Pivarnik, J., concurs with opinion in which Prentice, J., also concurs.

### CONCURRING OPINION.

PIVARNIK, J.—I concur with the majority opinion in all respects. I agree with the majority's analysis that the present action does not involve a criminal proceeding, within the meaning of the Fifth Amendment privilege against self-incrimination.

However, I would add further reasons to find that the trial court was acting properly and that therefore this writ should be denied. That is, even if this proceeding can be characterized as "quasi-criminal" or within the scope of such United States Supreme Court decisions as *Murphy* v. *Waterfront Commission,* (1964) 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 698, and *In re Gault,* (1967) 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, I would find that relator Kiritsis has forfeited the Fifth Amendment privilege as to this commitment pro-

cedure and interview. I do not see this commitment procedure as something separate from the criminal proceedings designed for this type of case. Rather, they are provided for by law when a defendant is found not guilty by reason of insanity, as this relator here asked the jury to find.

This relator, Anthony G. Kiritsis, was tried by the Marion County Criminal Court on criminal charges and found by the jury to be not guilty by reason of insanity at the time of the commission of the acts alleged. This was cause number CR 77-44A, and styled *State of Indiana* v. *Anthony G. Kiritsis*. Ind. Code § 35-5-3.2-1 (Burns 1975), directs a criminal court to hold a competency hearing after a return of a verdict of not guilty by reason of mental illness or defect. Under this statute, the trial court found that the relator was presently incompetent and dangerous to himself or others. Then, pursuant to the above statute, the trial court directed the Department of Mental Health to initiate civil commitment proceedings within the ten days required by the statute. The Department of Mental Health assigned relator Kiritsis to the LaRue Carter Memorial Hospital and, again pursuant to statute, Dr. Moore, superintendent of that hospital, filed a verified petition in the Marion Probate Court for the involuntary commitment of relator, which was within the ten-day directive of the criminal court's statutory order. Since Marion County is a populous county, it has many courts exercising jurisdiction in specific areas, unlike most counties in Indiana where criminal, civil and probate jurisdiction is vested in one court. Therefore, the cause was properly transferred to the court having probate jurisdiction in Marion County to proceed with the civil contempt proceedings provided for in Ind. Code § 16-14-9.1-5 (Burns Supp. 1978). At this point, relator Kiritsis refused to cooperate with examining psychiatrists, and asserted his privilege against self-incrimination under the Fifth Amendment of the United States Constitution.

In considering the relator's constitutional rights at this juncture, we must keep his position and that of the state in perspective. When charged with criminal responsibility for his acts, the relator filed the affirmative defense of not guilty by reason of insanity. The relator urged this defense on the trier of facts and presented evidence in proof of same, including medical witnesses, some of whom are the same witnesses now involved in the hearing before the probate court. The judgment of the criminal court jury was to put the relator in the status he sought, that is, not criminally responsible for the acts he committed because of his mental illness. The law then provides, in the statutes above cited, for procedures to be taken when such a finding is made. The witnesses testified before the probate court that they were unable to determine the mental status of the relator without an interview of him. They informed the court that the interview is probably the most essential component of a psychiatric examination. Dr. Fitzgerald testified that the heart of the psychiatric evaluation is the interview, both in terms of the psychiatric case history as well as the mental status examination.

When certain constitutional rights are relinquished, the United States Supreme Court has required that the record demonstrate a knowing, voluntary, and intelligent "waiver" of such right. *See, e.g., Johnson* v. *Zerbst,* (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. "The Court has not, however, engaged in this exacting analysis with respect to strategic and tactical decisions, even those with constitutional implications, by a counseled accused." *Estelle* v. *Williams,* (1976) 425 U.S. 501, 508 n. 3, 96 S.Ct. 1691, 1695, 48 L.Ed.2d 126, 133. When a defendant chooses to have a lawyer manage and present his case, the law allocates to the counsel the right to make binding decisions of trial strategy in many areas. *Faretta* v. *California,* (1975) 422 U.S. 806, 820, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 573. In such instances, defendants may be said to have "forfeited" constitutional rights or defenses by operation of law, as a result of the strategic or tactical

decisions made at certain stages of the proceedings. *See, e.g.* *Parker* v. *North Carolina,* (1970) 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; *McMann* v. *Richardson,* (1970) 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; *Brady* v. *United States,* (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. *See generally* Westen, *Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure,* 75 Mich. L. Rev. 1214 (1977). The acceptance and presence of counsel ensures implementation of the defendant's interest in conscious self-determination of his case, and minimizes the danger of inaccurate fact-finding. With these values satisfied, the presence of compelling interests of the state can justify foreclosing a defendant's attempt to raise anew a constitutional defense or right that has once been forfeited.

I would find that relator Kiritsis' filing of the affirmative defense of insanity forfeits any later attempt to assert the Fifth Amendment privilege against self-incrimination at commitment proceedings. The decision to file this defense was a counseled decision. It was also a strategic and tactical decision, insofar as such a defense is an alternative which a defendant is free to pursue or not as he wishes. As noted earlier, relator is now in the status which he sought. The interests of society must thus weigh more heavily in the balance to be struck in this case. It would put society in an untenable position to say, at this point, that relator could refuse to take part in any psychiatric interviews on the basis of the Fifth Amendment. The finding of the jury was that relator was not criminally responsible for his acts, but committed them because of a mental defect. The statute provides that in this case, a defendant should be held in custody and a determination made as to whether or not he continues to suffer from the mental illness, to the degree that he is dangerous to himself or others in society. Proceedings before the probate court at this time are designed to determine the present status of the condition that has already been found to exist in Kiritsis, as a result of the criminal trial. The relator con-

tends that this is a proceeding separate and apart from the criminal trial, so that his status cannot be determined or considered as a result of the findings and proceedings by the criminal court. It seems to me that this contention invites us to engage in legal and mental gymnastics not contemplated by the legislature, nor provided for in any of our laws. If adopted, it would provide a method for the relator to use these very sound and just laws to remove himself from criminal responsibility for his acts and then, in a second stage, to avoid the same legal vehicles which he invoked to put himself in this present position. Society would thus be prevented from keeping him in custody as a dangerous person because of his mental defect. For these reasons and those stated in the majority opinion, the writ should be denied.

Prentice, J., concurs.

NOTE.—Reported at 381 N.E.2d 1245.