**William R. McCALL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 977S718.

Supreme Court of Indiana.

Aug. 21, 1980.

James T. Walker, Merrillville, for appellant.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant), together with others, was found guilty of felony murder and premeditated murder, in connection with the murder of Richard Wozniak. He was sentenced to life imprisonment upon the felony murder verdict, while sentencing was withheld upon the premeditated murder verdict. This direct appeal presents the single issue of whether or not the court erred in refusing to permit one of Defendant's witnesses to testify.

In advance of trial, Defendant gave notice of his intent to present an insanity defense; and pursuant to Ind.Code § 35–5–2–2 (Burns 1975), the trial court appointed two psychiatrists to examine him. These psychiatrists were called to testify out of the order provided by the statute, but without objection of the defendant. Both testified that when they attempted to interview the defendant, he announced that he had nothing to say to them and refused to answer their questions. Both, however, had examined the defendant previously, and both testified that from such prior examinations and from hospital records, they had opinions as to Defendant's sanity at the time of the crime and that in their opinions, he was then sane.

The first witness called by the defense was Arthur A. Ludwig, who was called to give testimony relating to Defendant's sanity. The State objected to Ludwig's being permitted to testify, citing Defendant's refusal to cooperate with the court-appointed psychiatrists and the case of *Lee v. County Court of Erie County*, (1971) 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452, *cert. den.*, 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50.

The controversy as to whether or not the witness could testify centered upon whether Ludwig would be testifying as a lay witness or as an expert, because the holding in *Lee v. County Court of Erie County, supra,* was that where the defendant had refused to submit to a court ordered psychiatric examination, his offer of psychiatric testimony was properly rejected.

Voir dire examination was had and revealed that Ludwig was a professional family counselor employed by a community service organization, held numerous academic degrees and had had extensive schooling in law, sociology, psychology and psychiatry. It was further disclosed that Ludwig's contacts with the defendant and his family, which had spanned a period of approximately thirteen years, had not been a business or social relationship but had been in his professional capacity as a family counselor provided by a community service organization.

The trial court, upon the foregoing testimony, concluded that Ludwig would be tes-

tifying as an expert witness and, upon that basis, he was not permitted to testify. We do not approve of the holding in the *Lee* case, but even if this were not so, we find it so distinguishable from the case before us as to be an unsatisfactory basis for the trial court's ruling.

In the New York case, Lee pleaded not guilty by reason of insanity to two charges of murder. Conflicting psychiatric opinions were in evidence at this trial, and he was found guilty. On appeal, the convictions were set aside and a new trial ordered upon the grounds that the state had not proven sanity beyond a reasonable doubt and that the verdict was against the weight of the evidence.

On re-trial, Lee again pleaded insanity. The court sustained a state's motion for a mental examination, but Lee, asserting his prerogative not to incriminate himself, refused to submit to such examination. He was found to be in contempt of court, but the contempt order was reversed.

The trial court again ordered that Lee be examined and further ordered that in the event he did not cooperate, his insanity plea would be stricken and he would be denied the right to call psychiatric witnesses. Lee did refuse to answer the psychiatrists' questions, and the sanctions mentioned were imposed.

Other questions were presented in the review of the sanctions order upon a petition for a writ of prohibition. Our interest in the case, however, is that the Court of Appeals held: (1) The privilege against self-incrimination does not obtain to preclude a mental examination, where an insanity plea has been interposed. (2) Striking the defendant's plea was not a proper sanction, since the defendant's capacity to commit the crime was put in issue by his plea, not by his availability for examination. (3) Since such examinations are the most effective aid to a determination of the merits of the defense, a defendant who chooses to deprive the trier of fact of such an essential source of evidence should not be permitted to offer psychiatric evidence (evidence of the same character as that thwarted) at trial. (4) Other relevant evidence upon the issues should be admitted. (5) If other evidence of insanity is presented, the trial court should apprise the jury of Lee's failure to cooperate and instruct that such failure should be considered by them in determining the merits of the defense.

Our dissatisfaction with the *Lee* determination is that if a defendant is, in fact, insane or incompetent to stand trial, such an infirmity may just as likely extend to his seemingly irrational refusal to cooperate as to the anti social conduct that prompted the criminal charges. The problem obviously has no perfect solution, but since the issue of insanity becomes the most vital issue, if not the only one, in such a case and must ultimately be determined by the jury, it seems that the relevant competent evidence should not be precluded, for whatever reason.

The right of the trial court to impose sanctions to enforce compliance with orderly procedures is not questioned. But, due process of law simply cannot tolerate a procedure that imposes sanctions that cut out the very heart of a legally acceptable defense, for conduct, the accountability for which is closely aligned with the central issue at trial.

It has been suggested that the trial court's action was consistent with our holding in *State ex rel. Kiritsis v. Marion Probate Court*, (1978) Ind., 381 N.E.2d 1245. In *Kiritsis*, however, there are marked differences. *Kiritsis* was a contempt of court matter, following a hearing. Further, it stemmed from a civil commitment proceeding arising from a verdict of not guilty by reason of insanity. Neither criminal nor quasi-criminal sanctions were at stake. The case before us is more akin to *Haskett v. State*, (1970) 255 Ind. 206, 263 N.E.2d 529, which was distinguished in the majority opinion in *State ex rel. Kiritsis, supra.*

The recognition of insanity as a defense to criminal charges was recognized at common law simply because one who suffers from insanity cannot, in a legal sense, entertain a criminal intent. A statute providing that insanity would be no defense would be invalid. *Ingles v. People*, (1933) 92 Colo.

518, 22 P.2d 1109. Because the defense is uniquely subject to being feigned, various statutory schemes have been adopted to curb such abuses and to aid in the detection of bogus claims. The first statute enacted in this state was Acts 1913, Ch. 298, § 2, p. 774, which, for the first time, required a defendant desiring to claim insanity to give advance notice to the state by filing of a special plea. This statute also authorized the presentment, at the trial, of evidence of the defendant's present insanity—obviously to compensate for the difficulty in producing evidence of insanity existing at the time of the criminal act. By Acts 1927, Ch. 102, § 1, p. 268, the Legislature went further and required one defending upon the basis of claimed insanity to submit to psychiatric examination by disinterested court appointed experts who will testify at the trial. It has been urged that this procedure is for the benefit of those claiming that their criminal conduct was prompted by insanity. Such a claim obviously presupposes that the right to a defense of insanity exists by judicial grace, which is not the case. Notwithstanding that such statutes are something of a legislative incursion against the previously unfettered right to require the state to prove sanity, they have, nevertheless, generally been upheld against claims of compulsory self-incrimination. 51 Georgetown Law Journal 143; *Lee v. County Court of Erie County, supra.* Hence, it does not appear that the submission of evidence of the defendant's refusal to submit, when properly directed, or his refusal to cooperate with the examiners, would be violative of his rights. It, therefore appears that under such circumstances, the state would have the right to offer evidence of the defendant's uncooperative conduct, as an impeachment of his defense. A proper instruction that such evidence "could be considered upon the issue of the defendant's sanity or insanity" might also be helpful.

Apparently there was no hearing or any opportunity for the defendant to explain, if he could, his seemingly unwarranted conduct, let alone an opportunity given Defendant, in advance of the consequences, to reassess the propriety and wisdom of his conduct. Such conduct may indicate sanity or it may indicate insanity, and the jury, as the trier of the facts, should make the critical decision. Absent other substantial evidence of insanity, it appears that evidence of such a refusal could only give rise to a serious question as to the bona fides of the defense. The question, nevertheless, is one for the jury.

■ Assuming, arguendo, that the sanctions imposed by the *Lee* court were appropriate, there are several distinctions between that case and the one before us. In *Lee*, the trial court issued an order to him to cooperate and put him on direct notice that his failure to cooperate would result in the striking of his insanity defense and a denial of his right to call expert witnesses in his defense. In the case before us, there was no such notice. The trial court simply, upon the State's motion, refused to permit the defendant's witnesses to testify, because the defendant had been uncooperative with the court appointed psychiatrists.

It is also noteworthy that the defendant's conduct, or misconduct, apparently did not interfere with the witnesses' performance of their task and most certainly did not benefit the defendant. Both psychiatrists testified that, notwithstanding the defendant's refusal to cooperate, they were able to form opinions as to his sanity from prior examinations and hospital records and that it was their opinion that he was sane. In view of this, we have difficulty in understanding why in this case, the trial judge felt compelled to impose the drastic sanction.

■ A further distinction is that the evidence authorized to be excluded in the *Lee* case was of the same character or category as that which, but for his refusal to comply with the court's order, might have been produced by the State. Although the trial judge, in excluding the evidence in the case before us, apparently believed himself to be excluding evidence of the same character as that thwarted by the defendant, it was in fact, of a different category. The witnesses with whom the defendant had been uncooperative were expert witnesses. Expert witnesses are witnesses injected into a case,

because of their expertise in a given field, either to assist the jury in understanding some technical subject not ordinarily within the ken of a lay person or to express an opinion, often hypothetically, upon a disputed issue, following a proper foundation, both as to his knowledge of the subject involved and the specifics of the particular case. Expert opinions are manufactured expressly for the trial.

■ Opinion testimony, is not the exclusive domain of experts. Lay witnesses, in many instances, may also express opinions. The admission of such evidence has generally been limited to those situations where the facts from which the witness received an impression are too evanescent in nature to be recollected or too complicated to be separated and distinctly narrated. Under such circumstances the witnesses' impressions from such facts are admissible. *Wigmore on Evidence*, Third Edition, Section 1924. The admissibility of lay testimony on issues of sanity appears to have been but rarely questioned. It has been variously stated, but with uniform agreement by text and encyclopedia writers:

> "In criminal prosecutions as well as in civil cases, non-expert witnesses are not permitted to express general opinions as to sanity or to give opinions independent of facts and circumstances within their own knowledge, but, *as a general rule, those who are acquainted with the accused, or who have had sufficient opportunity to observe his conduct, may narrate the relevant facts known to them and thereupon express an opinion as to his sanity.*" 31 Am.Jur.2d Expert and Opinion Evidence § 88. (Emphasis added.) Citations omitted.

> "To warrant the receipt of an opinion of a nonexpert witness as to a person's sanity or soundness of mind it must satisfactorily appear that the opinion is based on the witness' own knowledge or observation and that he had sufficient opportunity to observe the person and to form an accurate opinion." 32 C.J.S. Evidence, § 546(33)(b).

> "Of the state of law in the various jurisdictions, it is enough to note in general that laymen's opinions are today everywhere conceded to be admissible, subject to local qualifications and quibbles."

Wigmore on Evidence, Third Edition, § 1938. Citations given, including *Doe v. Reagan, et al.*, (1839) 5 Blackford 217 and *Adams v. State*, (1971) 259 Ind. 64, 271 N.E.2d 425.

■ The rule in Indiana does not appear to have changed since it was expressed in *Doe v. Reagan, et al., supra*, as follows:

> "The opinions of witnesses may be taken as to the sanity of a grantor, but the facts upon which the opinions are founded must also be stated. Men of medical skills, who have no personal knowledge of the facts, may be asked their opinions whether certain appearances, detailed by other witnesses, are symptoms of insanity. *Rex v. Wright, Russ & Ryan's Crown Cases*, 456. But the opinion of a person not of the medical profession is not evidence, unless the facts upon which it is based, have come under his own observation, and unless also he states those facts to the jury." 5 Blackford at 218.

It thus appears that the distinction between expert and lay witnesses, at least upon an issue of sanity, is not whether or not they may express opinions, as inferences logically to be drawn from narrated facts and experiences, which either may do. Rather, it appears that the difference lies in the foundation required to render the opinion admissible. The lay witness' opinion is admitted not because of specialized knowledge of the general subject of insanity but because of his particular experience with the person. The expert, on the other hand, qualifies because of his specialized knowledge of the subject matter. His opinions are entitled to a certain credence, although his observations of, or experiences with, the subject may have been quite limited or even non-existent. Often, he premises his opinions upon hypotheticals. His opinions, in either event, are created expressly for the purpose of becoming evidence. Whereas, the layman's opinions are by-products or "fall-out" from observations or experiences having coincidental value as evidence.

Obviously Ludwig was eminently qualified to serve as an expert in several areas, but he did not function or appear at trial in that capacity. The evidence offered through him was of a different character, although admittedly closely resembling it, than the supposed evidence that the defendant was charged with obstructing. He had had extensive contact and experience with the defendant for a long period of time prior to the commission of the crime. It is true that his experience with the defendant was in his professional capacity, but its purpose was not to qualify him as a witness. Although Ludwig's professional qualifications undoubtedly would have affected the weight accorded to his testimony, and the jury may well have regarded him as an expert, his expertise was not the basis for determining his competence to testify.

For error in excluding the defendant's offer of evidence of his insanity for the consideration of the jury, the judgment of the trial court is reversed and the cause remanded to the trial court for a new trial.

DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I must dissent from the majority opinion in its entirety in this cause. The holding of the majority will frustrate and confound trial courts in their efforts to implement the insanity issue in criminal trials, and render it impossible for them to effectively present this issue to the jury.

Appellant McCall has never claimed, nor is there any evidence, that he refused to cooperate with the court-appointed psychiatrists because of his alleged insanity or incompetence. In fact, the evidence was to the contrary. Both expert witnesses testified that the defendant refused to have anything to do with them. Both of them were able to testify that, because they had examined him on previous occasions concerning another case, and because they were able to look at hospital records, it was their opinion that he was sane at the time he committed the crime. Appellant did not address this issue and attempt to show the

trial court or this Court that the reason for his obstreperous conduct toward the expert witnesses was based on an insane condition that prevented him from acting rationally, so that it might be said that his very refusal was evidence of his insanity.

The appellant made an offer to prove which was directed to the proposed testimony of Rev. Ludwig and was as follows:

"Your Honor, at this time I'd like to make an offer to prove what Rev. Ludwig would have testified to. . . . I would like to prove, make an offer that Rev. Ludwig had various conferences with Bill McCall, has known Bill McCall for thirteen years, has helped the family at various times from the time Bill McCall was a minor through his Army time, after he returned home from the Army he had many interviews and consultations with Rev. Ludwig. At no time do I think Rev. Ludwig would testify that he was not paid for this. He would also testify to the fact that Bill McCall's intellectual ability in his opinion was extremely low. That he had a very insecure emotional life . . .; that Bill McCall was twice married, once to a woman he met in one week, therefore showing a limit to his capabilities to form responsible actions. And that the personality of Bill McCall was one of a child who never grew up, either emotionally or intellectually. That Bill McCall could not conform to the conduct of law, and that at the time he did not know right from wrong. And that he saw Bill McCall two weeks before the time of the incident. Bill McCall came to him for help.

. . . . .

That Bill McCall was unstable, easily influenced, easily led, and had come to Rev. Ludwig on many occasions for advice as to what were the right and wrong actions to take on various occasions. And that Rev. Ludwig in his opinion would find Bill McCall not able to conform his actions to law.

Record at 916–17. This testimony of Ludwig is obviously the typical testimony of an expert witness relating to the defendant's

ability to conform his conduct to the law and to know right from wrong at the time he committed the crime. The proffered testimony concerns the issue the two psychiatrists were appointed to inquire into and testify to. The presentation of their testimony sets the stage for placing the insanity issue before the jury. The fact that the court-appointed psychiatrists were able to give opinions as to McCall's sanity does not support appellant's contention that he had a right to proceed with his own evidence concerning his sanity. The effect of the testimony of these two witnesses was that, from their *past* observations, and those made at the time they confronted him and attempted to question him, they concluded he was sane. However, the weight of their testimony in this case was severely weakened by their inability to examine him at all regarding the facts and circumstances of *this* incident, and the jury was thus deprived of expert testimony concerning this case. A jury will be deprived in this manner the vast majority of times a defendant refuses to cooperate with witnesses called by the court, because in most cases the court-appointed psychiatrists would not have previously examined the defendant and formulated an opinion so that they could meaningfully testify. Yet, the majority opinion condones this situation, and further allows the defendant to bring witnesses of his own who will testify that he was insane when the crime was committed.

The defense of insanity is an affirmative defense that must be pleaded by the defendant to become an issue in the case. It is a humane provision of the law, responding to due process considerations for those who violate society's laws, sometimes violently, not through criminal or irresponsible abandon, but because of the infirmity of a mentally diseased or defective mind. Persons found to be in such a state are not required by society to suffer the criminal penalty for their acts, but are referred to the civil side of the docket for commitment to mental institutions for medical treatment and safe-keeping. The legislature provided for the manner in which such a plea should be advanced and the procedure to be followed in presenting the issue. Ind.

Code § 35–5–2–2 *et seq.* (Burns 1975). These provisions have been placed in our law for the benefit of this defendant and others who claim their acts were prompted by insanity.

The defendant in this case called upon this special plea to present his defense in the case, and then refused to follow the provisions set out for the implementation of this defense. Again, I emphasize there was *no* showing, nor any attempt to show, that the actions of the defendant in refusing to cooperate were caused by the infirmity of a mental disease or defect. If there had been evidence that the defendant, at the very time he refused to cooperate, was insane and that his acts of refusal were based on insanity, that, of course, would be competent evidence to be presented to the jury for their consideration, along with all other evidence on the question of sanity. That is not the case before us. The majority opinion allows a defendant to call on the plea of insanity, refuse to cooperate in any way with the court-appointed expert witnesses, and then "have his cake and eat it too," by calling his witnesses, who will testify that he was insane when he committed the crime. Such a tactic allows a defendant to frustrate and prostitute humane and sound principles of law, and places the trial courts of this State in a position of being unable to meaningfully and effectively present before the jury the question of the defendant's sanity.

The majority attempts to comfort us by stating that all that needs to be done is to have the trial judge tell the jury that the defendant refused to cooperate with the expert witnesses, and then leave it to the jury to decide whether or not that refusal was based on insanity. In the first place, this admonishment will give the jury nothing to use as a basis for determining why or under what circumstances the defendant refused to cooperate, and thereby leave them to speculate on the reason. Secondly, the judge's statement concerning the defendant's actions would not be evidence and would not be useful at all to the jury in making their decision on the question of the defendant's sanity. There is little comfort, then, in this suggested procedure.

The trial court's refusal of appellant's tender of evidence in regard to his sanity was not so much a sanction as it was a provision that if the defendant refused to follow the procedure set down in the law for the presentation of the insanity issue, then neither would he be permitted to offer any expert testimony on that subject. I think this was a proper posture for the court to take, and, in part, is the posture taken by *Lee v. County Court of Erie County,* (1971) 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452, *cert. denied* 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50, of which I approve and which the majority has rejected. It is also consistent with our holding in *State ex rel. Kiritsis v. Marion Probate Court,* (1978) Ind., 381 N.E.2d 1245.

I further disagree with the majority in its assessment that Ludwig, in fact, would have been a lay witness. Moreover, I believe that even if he would have been a lay witness, the court properly refused his testimony. If the defendant refused to have the issue of insanity presented accordingly to statute by the court-appointed psychiatrists, then I think the court could have properly foreclosed him from presenting *any* evidence on that subject. Secondly, there is no way under the law that the proffered testimony of Ludwig, as presented in the offer to prove, could have been presented as lay testimony. As the experts quoted in the majority opinion provide, a lay witness can only testify as to the facts on which he speaks, and then only on his observations or that which he has gained through his senses. This witness had not seen the defendant for two weeks. According to the offer to prove, Ludwig would have testified that, based on his previous counselling with the appellant, it was his opinion appellant could not conform his conduct to the law and was not able to discern right from wrong. A lay witness is not competent to testify to this. A lay witness could testify that, as he observed the defendant, it appeared to him that the defendant did not act normally or that he showed some emotion or lack of emotion, or something otherwise apparent and observable by any other person. Whether these observations lead one to conclude that the defendant was legally insane is an area for the trier of fact to determine, not the lay witness giving the testimony.

Before Ludwig could testify to the matters stated in the offer to prove, he would have had to have been qualified as an expert witness to the satisfaction of the court. It appears that, based on his education and experience, he did have such qualifications, and as a matter of fact, the trial court indicated that it considered him to be an expert witness. Lay witnesses are usually people who are near the defendant at or near the time of the occurrence of the crime, such as neighbors, family members, police officers, ambulance drivers, or other eyewitnesses who testify as to what they observed about the defendant. These witnesses are not permitted to go in to a psychological or psychiatric analysis of the defendant's mental stability, but only to recite their observations, so that the jury might make this decision.

For all of the foregoing reasons, I would affirm the judgment of the trial court.

GIVAN, C. J., concurs.