STATE of Indiana ex rel. W.A., Relator,

v.

The MARION COUNTY SUPERIOR COURT, JUVENILE DIVISION, and the Honorable Carol Orbison, as Magistrate Thereof, and the Honorable James W. Payne, as Judge Thereof, Respondents.

No. 49S00–9803–OR–154

Supreme Court of Indiana.

Dec. 31, 1998.

Daniel C. Schroeder, Indianapolis, for Relator.

Katherine A. Cornelius, Indianapolis, for Amicus Curiae Marion County Public Defender Agency, Appellate Division.

James W. Payne, Judge, Indianapolis, for Respondent.

James A. Masters, Harold E. Brueseke, South Bend, for Amicus Curiae Indiana Council of Juvenile and Family Court Judges.

SHEPARD, Chief Justice.

Relator W.A. is a juvenile who seeks to invoke the original jurisdiction of this Court for a writ of mandamus. The writ would compel the respondent Marion Superior Court, Juvenile Division, by its Judge the Honorable James W. Payne, to release W.A. from home detention and remove all conditions from his release status.

On February 5, 1998, the Marion County Prosecutor filed a petition to declare W.A. delinquent. The petition alleged that W.A. had committed the act of disorderly conduct, a class B misdemeanor if committed by an adult, by fighting at school and causing injury to another child. *See* Ind.Code Ann. § 35–45–1–3 (West 1998). The court held an initial hearing on the petition the day it was filed. At the initial hearing, W.A. denied the allegations of the delinquency petition. The court scheduled a "Denial Hearing," or fact-finding hearing, for March 19, 1998. It then released W.A. to the custody of his grandfather under "informal home detention," meaning that "the child will remain at home: At all times, Except when accompanied by a Parent, Except when at School and Except when at Work."[1] (R. at 6.) Defense counsel objected to the imposition of conditions on W.A.'s release.

On February 23, 1998, W.A. moved the court to hold the fact-finding hearing on his delinquency and to review his home detention order by March 5, 1998, his twentieth day of detention.[2] The court denied that motion on February 26, 1998.[3]

W.A. initiated this original action on March 11, 1998. He alleges that the trial court has exceeded its jurisdiction by unlawfully ordering home detention and by ordering detention for a longer period than authorized by statute.

**Standards for Writs of Mandamus**

Petitions for writs of mandamus are governed by the Indiana Rules of Procedure for Original Actions. A relator seeking a writ of mandate faces a high hurdle. Original Action Rule 2(E) warns that "[o]riginal actions are viewed with disfavor and may not be used as substitutes for appeals." Because it is an extraordinary remedy, a writ of mandamus will be issued only when the trial court has an absolute duty to act or refrain from acting. *State ex rel. Pickard v. Superior Ct. of Marion County*, 447 N.E.2d 584 (Ind.1983).[4] A successful relator must also

---

1. According to both parties, Indiana juvenile courts routinely order three types of home detention as alternatives to detention in a state facility: informal home detention, formal home detention, and electronic monitoring. (Relator's Br. at 2; Respondent's Br. at 4.) Under formal home detention, the child is prohibited from leaving his home except to go to school, and in some cases also to work if accompanied by an adult family member. (*Id.*) Electronic monitoring is the most controlled type of home detention, and generally involves the same restrictions as formal home detention, but also involves attaching a device to the child that allows authorities to monitor the child's location. (*Id.*)

2. The number of days is calculated excluding Saturdays, Sundays, and legal holidays, as directed by statute. *See* Ind.Code Ann. § 31–37–11–2 (West Supp.1998).

3. On March 6, 1998, W.A. filed a Verified Petition for Writ of Habeas Corpus. (R. at 21–23.) At the time the briefs in this original action were filed, the trial court had not yet ruled on the habeas corpus petition. (Relator's Br. at 3.)

4. *See also State ex rel. Goldsmith v. Superior Ct. of Marion County*, 463 N.E.2d 273, 275 (Ind. 1984) ("As a general rule, the relator must have a clear and unquestioned right to relief before mandamus may be invoked ... and the respondent must have failed to 'perform a clear, absolute, and imperative duty imposed by law.'"); *State ex rel. Marcrum v. Marion County Superior*

show a clear and obvious emergency such that the failure of this Court to act will result in substantial injustice. *State ex rel. Kiritsis v. Marion Probate Ct.*, 269 Ind. 550, 381 N.E.2d 1245 (Ind.1978).

### The Power to Order Home Detention

The first issue is whether a trial court may order home detention for a juvenile pending a fact-finding hearing. W.A. maintains that Indiana trial courts do not possess the power to order any form of home detention in these instances.

W.A. argues that because Indiana Code § 31–37–6–6, which grants courts authority to detain a child pending a delinquency hearing, does not explicitly mention the power to order home detention, no such power exists. (Relator's Br. at 5.) According to W.A., a court must either detain an alleged delinquent in a state facility pending his hearing or "'release the child on the child's own recognizance or to the child's parent, guardian, or custodian upon the person's written promise to bring the child before the court at a time specified.'" (*Id.* (quoting Ind.Code Ann. § 31–37–6–6(a) (West Supp.1998)).)

In response, the trial judge argues that Indiana's juvenile courts inherently possess the power to order various forms of home detention. (Respondent's Br. at 5.) Judge Payne asserts that home detention is "in keeping with the intent and design of the Juvenile Code," (*id.* at 7), and "[t]he inability of the courts to use programs of home detention/house arrest would materially undermine the authority of the court," (*id.* at 6). We agree.

Indiana was the second state in the nation to create special courts for what was early called "child-saving."[5] Modern Indiana juvenile courts possess broad powers to protect and serve the interests of the state's children and communities.[6] More specifically, juvenile courts have the power in some circumstances to confine a child alleged to be delinquent in a detention facility. *See* Ind.Code Ann. § 31–37–6–6 (West Supp. 1998); Ind.Code Ann. 31–37–7–2 (West Supp. 1998). We are satisfied that included within the broader power to detain in a facility lies the power to order a less restrictive form of detention at home, where parents or guardians can participate in the child's supervision.[7] Home detention furthers the policy directives of the Juvenile Code, and as the trial judge points out, it provides a convenient alternative to traditional detention for some counties and a necessary alternative for others.

Judge Payne correctly characterizes W.A.'s argument as giving the court the choice only "to release the child with no conditions or restrictions or to detain the juvenile [in a state facility]." (Respondent's Br. at 5.) He describes a number of practical problems that would arise from such a strict dichotomy. First, home detention programs are commonly used by counties around the state. (Respondent's Br. at 5; App. to Respondent's Br. Exs. 3,4.) Disallowing the use of home detention would hinder those counties' juvenile justice efforts unnecessarily by putting greater pressure on facilities that are typically already overcrowded. Sec-

*Ct.*, 273 Ind. 222, 230, 403 N.E.2d 806, 811 (1980) ("[A] writ of mandate is an extraordinary remedy and will only apply where the lower court has failed to act in fact of a clear legal duty....").

5. Frank Sullivan, Jr., "Indiana as a Forerunner in the Juvenile Court Movement," 30 Ind. L.Rev. 279, 283–296 (1997).

6. The policy in our statutes has long been so. The original juvenile court law provided: "This act shall be liberally construed, to the end that its purpose may be carried out...." 1903 Acts, Ch. 237, Sec. 10. The Indiana Code speaks in broad policy terms of "recogniz[ing] the responsibility of the state to enhance the viability of children

and family in our society," Ind.Code Ann. § 31–10–2–1(2) (West Supp.1998), "remov[ing] children from families only when it is in the child's best interest or in the best interests of public safety," Ind.Code Ann. § 31–10–2–1(6) (West Supp.1998), and "provid[ing] a judicial procedure that ... recognizes and enforces the legal rights ... [and] the accountability of children and parents," Ind.Code Ann. § 31–10–2–1(9)(B)– (C) (West Supp.1998).

7. As W.A. states in his brief, "Even if the Marion County Juvenile Court were authorized to detain W.A. in his home, that authority can only be derived from its authority granted under Ind. Code § 31–37–6–6, as a lesser included power." (Relator's Br. at 7.)

ond, a significant number of Indiana counties do not have a juvenile detention center. (Respondent's Br. at 3.) The use of home detention programs in those counties is particularly important in providing courts with flexibility in fashioning appropriate remedies for juveniles and protecting communities.

In its brief as *amicus curiae*, the Indiana Council of Juvenile and Family Court Judges observes:

> The Indiana juvenile courts which use these forms of conditional release provide a reasonable accommodation to the liberty interests of children who, but for the option of such conditional release, would otherwise be detained in a detention facility. Courts using such options are working within the program of juvenile justice established by the General Assembly to provide the citizens of their community with a way to control the conduct of youth in need of control without the vast expenditure of limited governmental resources needed for additional secure juvenile detention facilities.

(*Amicus Curiae* Br. at 23.)

Both for counties that already maintain juvenile detention centers and those that do not, the alternative of home detention allows juvenile courts to effectuate more efficiently the goals of the Juvenile Code. It inherently lies within the greater power to detain a juvenile in a state facility.

Before a court can order any form of detention, however, it must first find probable cause to believe the child is a delinquent child *and* that:

(1) the child is unlikely to appear for subsequent proceedings;

(2) detention is essential to protect the child or the community;

(3) the parent, guardian, or custodian:

(A) cannot be located; or

(B) is unable or unwilling to take custody of the child; or

(4) the child has a reasonable basis for requesting that the child not be released.

Ind.Code Ann. § 31–37–6–6(a) (West Supp. 1998). W.A. points out that the court "made no findings as to why informal home detention was necessary." (Relator's Br. at 2.) W.A. is correct that the trial court failed to find one of the conditions required by § 31–37–6–6(a) before imposing detention.

■ The trial judge responds that "[t]here is no question that probable cause was found in this case," (Respondent's Br. at 5), and points to the affidavit for probable cause signed by a police Sergeant and the prosecuting attorney. (*Id.*; R. at 7.) Of course, the statute requires more than probable cause alone.

■ In his Report of Preliminary Inquiry and Investigation, W.A.'s probation officer recommended "Release to [grandp]arent and Informal Home Detention." (R. at 9.) According to that report, the reason for the recommendation was simply that there was "Supervision Available." (*Id.*) The report further commented, "Due to the fact that the youth is not currently active with this court, it is recommended that the youth is released to his grandparents on [informal home detention], to assist in the supervision of the youth." (R. at 10.) The space provided for comments regarding the need for community safety or measures taken to ensure community safety was left blank. (*See id.*) The transcript of the Initial/Detention Hearing does not reveal any reasons for W.A.'s home detention given by the judge or anyone else. (*See* R. at 35–43.) We cannot find any articulated reason for W.A.'s home detention in the record of proceedings. The court seemingly adopted the probation officer's recommendation without making any finding of its own. Without finding one of the conditions required by statute, the court had no power to detain W.A. in either a detention facility or at his home.

### Time Limit for Detention Pending Fact-finding

Relator also raises another issue: the period of time for which a trial court may detain a child pending a delinquency denial or fact-finding hearing. As described above, the trial court held the initial hearing on February 5, 1998, ordered informal home detention (to which W.A. objected), and scheduled a fact-finding hearing for March 19, 1998, thir-

ty days later. On February 23, 1998, W.A. moved the court to schedule the fact-finding hearing for March 5, 1998, the date falling twenty days after the initial hearing was held and home detention ordered. The court denied that motion.

Indiana Code § 31–37–11–2(a) provides time limits by when a fact-finding hearing must be held after a child is placed in detention. That section states:

(a) If:

    (1) a child is in detention; and

    (2) a petition has been filed; a fact-finding hearing ... must be commenced not later than twenty (20) days, excluding Saturdays, Sundays, and legal holidays, after the petition is filed.

Ind.Code Ann. § 31–37–11–2(a) (West Supp. 1998). Indiana Code § 31–37–11–2(b) provides that a hearing must be held within sixty days for a child who has not been placed in detention. Because the court in this case scheduled W.A.'s fact-finding hearing for thirty days after the delinquency petition was filed, the question becomes whether the informal home detention qualifies as detention for purposes of § 31–37–11–2. If so, then the court was required to hold the fact-finding hearing to be held within twenty days as required by subsection (a). If not, then the court could have scheduled the hearing for anytime within sixty days, as required by subsection (b).

■ As we discussed above, trial courts do possess the power to order various forms of home detention as alternatives to ordering detention in a public facility. Ordering home detention does not, however, relieve a court of a duty it would otherwise have had if detention in a facility had been ordered. We conclude that home detention still qualifies as detention to bring it within the time require-

ments of § 31–37–11–2. The trial court argues:

> [T]he movement of the juvenile is not restricted by the court, but restricted by the guardian, in this case, the grandfather. The juvenile can go anywhere so long as the grandfather/guardian goes with him. His freedom of movement is certainly not restricted as if he were in jail as an adult or a juvenile detention facility.... His liberties [are] not confined as he is not placed in a governmental facility with restrictions. It is inappropriate to refer to this [Relator] as being "detained"....

(Respondent's Br. at 6.) A child on home detention still faces significant restrictions, though not to the degree of one placed in a facility. Even under informal home detention, he is detained by definition. *See Black's Law Dictionary* 449 (6th ed.1990) (defining "detain" as "to check, to delay, to hinder, to hold, or keep in custody, to retard, to restrain from proceeding, to stay, to stop, to withhold"). Consequently, a juvenile placed on home detention must be given a fact-finding hearing, when one is necessary, within twenty days.[8]

In some circumstances a child, represented by counsel and with the consent of his parent or guardian, may wish to waive the twenty-day time limit on hearings for a wide variety of reasons. W.A. made no such waiver. Indeed, he moved the court to reschedule his fact-finding hearing to meet the twenty-day limit. The court wrongly denied his motion.

■ The Juvenile Code sets forth consequences for failing to meet the statutory time requirements for fact-finding hearings. If a child is on detention, home or otherwise, and the court does not hold its fact-finding hearing within the twenty days required by § 31–37–11–2(a), and the child does not waive his right to have the hearing held within that amount of time, then "the child shall be

---

8. In *Franklin v. State*, 685 N.E.2d 1062, 1064 (Ind.1997), we determined that pre-trial home detention did not count towards credit for time served. In reaching that conclusion, however, we did not explicitly determine that pre-trial home detention was not detention per se, only that pre-trial home detention did not count as time served. That decision was based on a specific statutory amendment which indicated a clear legislative intent to disallow credit time for pre-trial home detention. We stated: "the amendment to the post-conviction home detention statute evinces legislative intent that credit time can no longer be awarded to pre[-]trial home detainees." (*Id.*) No such clear exposition of legislative intent exists here, and we believe that home detention is detention for purposes of the time limits implicated in W.A.'s case.

released on the child's own recognizance or to the child's parents, guardian, or custodian." Ind.Code Ann. § 31–37–11–7 (West Supp.1998). Accordingly, the court here should either have granted W.A.'s motion for a hearing to be held on March 5, 1998, or set him free on his own recognizance or to his grandparents.

### Conclusion

W.A. has carried his burden of showing that the trial court failed to meet an absolute duty imposed by law. The petition for a writ of mandate is thus granted.

SELBY and BOEHM, JJ., concur.

DICKSON, J., concurs in result.

SULLIVAN, J., concurs with separate opinion in which DICKSON, J., concurs.

SULLIVAN, Justice, concurring.

In a different case, I think that we could well find, based on the *parens patriae* history of the Juvenile Code[1] and the purposes clauses contained at Ind.Code § 31–10–2–1 (especially § 31–10–2–1(4), (6), (8) and (9)(C)[2]), that a juvenile court has inherent authority to impose certain restrictions on a child alleged to be delinquent and the child's parents pending fact-finding without those restrictions constituting "detention" within the meaning of the Code.

DICKSON, J., concurs.

---

1. The Chief Justice is kind enough to cite my history of the founding of the Indiana juvenile court. In it, I discuss the *parens patriae* philosophy that animated the juvenile court movement. 30 Ind. L.Rev. at 281.

2. "It is the policy of this state and the purpose of this title to: ...
   (4) strengthen family life by assisting parents to fulfill their parental obligations; ...

(6) remove children from families only when it is in the child's best interest or in the best interest of public safety; ...

(8) use diversionary programs when appropriate;

(9) provide a judicial procedure that: ... (C) recognizes and enforces the accountability of children and parents."

Ind.Code § 31–10–2–1 (1998).