FARMERS' BANK OF GREENVILLE v. BLOUNT (SOUTHERN STOCKYARDS CORPORATION, Intervener).

In re WINGATE et al.

(Circuit Court of Appeals, Fourth Circuit. October 20, 1925.)

No. 2356.

**1. Mortgages ⊚⟿270—Agreement for additional and cumulative security for loan, in event negotiations for larger loan failed, held not established.**

Agreement that, if negotiations for loan failed, note and mortgage executed as part of such negotiations should be transferred to bank as additional and cumulative security for smaller loan already made to borrower, which was to be paid from proceeds of new loan, *held* not established.

**2. Assignments ⊚⟿48—Equitable assignment for valuable consideration may be made and will be enforced.**

Equitable assignment of choses in action, possibilities, expectancies, or things not in esse,

for valuable consideration, may be made, and will be enforced by court of equity, if it clearly appears that actual transfer and assignment was intended.

**3. Assignments ⊚⟿48—No particular phraseology necessary to effect equitable assignment, though intent to transfer and execution thereof essential.**

No particular phraseology is necessary to effect an equitable assignment, though intent to transfer and execution thereof are indispensable, nor can assignor retain control, authority to collect, or power of revocation.

**4. Mortgages ⊚⟿244(1)—Assignment of note and real estate mortgage, executed in negotiations for unconsummated loan, held not to give assignee rights superior to intervening mortgagee.**

Where bank lent money on specific agreement that it would be repaid out of proceeds of real estate loan then being negotiated by borrower, but which was never consummated, though notes and mortgage were executed and mortgage recorded, *held*, assignment of such notes and mortgage to bank at direction of borrower was ineffective to give bank lien on lands superior to that intervening mortgagee.

**5. Subrogation ⊚⟿36—Assignment of mortgage, not enforceable by assignor, held to give no right by subrogation.**

Where bank lent money on agreement that it would be repaid from proceeds of real estate loan then being negotiated, but which was never consummated, though notes and mortgage were executed and mortgage recorded, *held*, assignment of such notes and mortgage to bank with consent of borrower gave bank no lien by subrogation superior to claim of intervening mortgagee.

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Raleigh; Henry G. Connor, Judge.

Suit by M. K. Blount, trustee in bankruptcy of R. Wingate and R. Wingate & Son, trading as R. Wingate & Son, against the Farmers' Bank of Greenville, N. C., in which the Southern Stockyards Corporation, trading as Smythe Bros., McCleary, McClellan & Co., intervened. From a decree directing disposition of proceeds of real estate, defendant bank appeals. Affirmed.

For opinion below, see 297 F. 277.

W. B. Rodman, Jr., of Washington, N. C. (Albion Dunn, of Greenville, N. C., and A. D. McLean, of Washington, N. C., on the brief), for appellant.

Lewis G. Cooper, of Greenville, N. C. (Skinner & Whedbee, of Greenville, N. C., on the brief), for appellees.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. A bill in equity was filed in this cause by the appellee, M. K. Blount, trustee in bankruptcy of R. Wingate and R. Wingate & Son, bankrupts, against the appellant, the Farmers' Bank of Greenville, and others. The bill was filed by direction of the United States District Court in the bankruptcy proceedings of R. Wingate and R. Wingate & Son, and had for its purpose the ascertainment and settlement of the amount and priority of the liens upon certain real estate owned by the bankrupts and sold in the bankruptcy proceedings, consisting especially of two tracts of land located on the Gum Swamp Canal, in Pitt county, N. C.; one tract containing 352.1 acres, and the other 187.5 acres. The gross proceeds of the sale of the two tracts of land was $49,500, and the aggregate debts secured by mortgages and trust deeds as to which there was no controversy, and which admittedly have priority over those of the two liens in dispute hereinafter mentioned, was $33,619.23, leaving a balance after payment of certain taxes and costs of suit of $14,205.77. This last-named amount is claimed on the one hand by the appellant as subject to its debt of $18,000, due it on account of a loan for that sum made by it to the bankrupt, R. Wingate, and secured, as is claimed by the Farmers' Bank of Greenville, by the execution of a certain note by Wingate and wife for $37,500 to the Virginia-Carolina Joint-Stock Land Bank, hereinafter called the Land Bank, with its principal office in Norfolk, Va., the payment of which was secured to said Land Bank by trust deed from Wingate and wife to the Guaranty Title & Trust Corporation. This security, appellant bank insists, inured to it by reason of the circumstances under which it was executed and the subsequent assignment of the note secured in the same to it. On the other hand, the appellee, the Southern Stockyards Corporation, trading as Smythe Bros., McCleary, McClellan & Co., intervener, claims the said amount as applicable to the balance due on its lien on the property sold by virtue of a trust deed executed on December 4, 1920, by R. Wingate and wife to F. G. James, securing two notes, one for $26,000 and one for $25,000, due respectively on January 1, 1922, and January 1, 1923.

The facts surrounding the incurring and effort to secure the debts due, respectively, to the Farmers' Bank of Greenville, on the one hand, and the Southern Stockyards, trading as Smythe Bros., McCleary, McClellan & Co., on the other, may be briefly given. R. Wingate was a man of large means, engaged on a considerable scale as a sales and livery stableman and as a farmer, with the Farmers' Bank of Greenville, N. C., and from this bank in the year 1919 secured two loans, one for $8,000 and another for $10,000, taking as special security for the indebtedness notes, choses in action, etc., due Wingate in his business. At the time of securing the $8,000 and the $10,000, Wingate's purpose was to borrow a much larger sum, $37,500, which was more than the Farmers' Bank of Greenville was willing to carry, and it was concluded by Wingate to apply for $37,500 from the Land Bank at Norfolk. It was understood between him and the Farmers' Bank of Greenville that he would make such application and upon securing the loan would handle the amount received through the Farmers' Bank of Greenville, with the view to their securing the money advanced by them, and pending this understanding they advanced to Wingate, on November 19, 1919, the sum of $10,000.

Formal application was made to the Land Bank at Norfolk for the loan of $37,500. Wingate and his wife executing their formal notes for the same and their trust deed to the Guaranty Title & Trust Corporation, trustee, dated April 1, 1920, to secure the amount thereof. The title of the property was examined, and it was understood that the loan was to be effected, but the same from one cause or another was never consummated. Among other things, the determination of the constitutionality and validity of the Federal Land Bank Act was questioned, which, however, was determined favorably to the bank; but from that delay, and the depreciation of values about that time, and other causes, the application for the loan was rejected, and finally declined altogether. Thereupon the Greenville Bank, on the 24th of December, 1920, made application to the Land Bank for a transfer of the $37,500 note executed in their favor, insisting that, by reason of the understanding that they were to be paid out of the proceeds of loan when made, it was entitled to be indemnified under their trust deed to the extent of the $18,000 loaned by them, and on the 28th of December, 1920, R. Wingate by power of attorney directed the Land Bank to make such transfer. Subsequently, on the 8th of February, 1922, the Land Bank did make an assignment to the Farmers' Bank of Greenville of any right, title, and interest that the said Land Bank might have in and to the $37,500 note executed by Wingate and wife and secured by deed of trust to the Guaranty Title & Trust Corpora-

tion, recorded in the office of the registrar of deeds of Pitt county, N. C., on the 12th of February, 1922, Book Q 13, page 411.

The indebtedness due to Smythe Bros., whereby they claimed the $14,205.77, arose in this way. They were largely engaged in business with Wingate, with the result that on the 4th day of December, 1920, a trust deed was executed by him and wife to F. G. James, trustee, on the property sold herein, to secure two notes, one for $26,000 and the other for $25,000. This trust deed was duly recorded on December 4, 1920, on the registry of deeds in Pitt county, N. C., and on the date of Wingate and Wingate & Son's bankruptcy, on the 2d of March, 1922, there was due thereon an amount in excess of the balance remaining for distribution as aforesaid, arising from the proceeds of the sale of land.

The crucial question to be determined in this case is whether this lien shall be paid, or whether the sum of $18,000 due the Greenville Bank aforesaid, and for which it claims a lien under the transfer of the note executed to the Land Bank, shall be first paid; its contention being that an equitable lien exists in its behalf, and that it should be subrogated to the rights of the Land Bank in the mortgage given by Wingate to secure the $37,500 note as aforesaid. The learned judge of the lower court by the decree appealed from decided the questions at issue as to the ownership of the balance arising from the sale of the lands of $14,205.77 against the appellant and in favor of the Southern Stockyards, Incorporated, and that the amount in hand should be paid in partial liquidation of the balance due under the deed of the 4th of December, 1920, to F. G. James, trustee, and that no lien, or right of lien, either by equitable assignments, subrogation, or otherwise, existed in favor of the appellant, the Farmers' Bank of Greenville, under the trust deed securing the $37,500, in favor of the Virginia-Carolina Joint-Stock Land Company of Norfolk; it appearing that this transaction was never consummated and that the proposed loan to be secured thereon was never in fact made.

It will thus be seen that there are really but two questions for determination on this appeal, and they are whether the appellant, the Farmers' Bank of Greenville, has a lien upon the funds distributed by the court, either by reason of an equitable assignment of the note secured by trust deed to the Guaranty Title & Trust Corporation as trustee, to secure such indebtedness to said Land Bank, or whether a right of subrogation exists in favor of the Farmers' Bank of Greenville arising in their behalf, upon the facts and circumstances under which said bank made its loan of $18,000, and to whom the obligation to the Land Bank was subsequently assigned.

[1] An additional question arising upon the facts in the case may be said to be pertinent, namely, the terms and conditions upon which the proposed loan from the Land Bank to Wingate was to be made, and whether there existed any understanding between the Farmers' Bank, the Land Bank, and Wingate that, if from any cause the loan from the Land Bank was not made, the note and security given in its behalf by Wingate should operate as an additional and cumulative security in behalf of the Farmers' Bank. Judge Connor, before whom the witnesses were orally examined in the District Court, found the question of fact presented adversely to the appellant, the Farmers' Bank, his conclusion being as follows:

"I am constrained to conclude, from a careful examination of the testimony of the witnesses, who were parties to, and made the agreement of, September, 1919, and the witnesses to whom they communicated and explained the terms of the agreement, who were interested in, and depended upon, to execute it, together with the conditions under which the agreement was made, its purpose, the reasons which moved the parties to make the agreement, and the failure of either of the parties, who were examined orally before me, to testify that there was any 'further agreement,' by which, in the event of the failure of Wingate to secure the loan from the Land Bank, the note and mortgage, which were not executed by Wingate until April 1, 1920, seven months after the loans were made by the Farmers' Bank, were to be transferred to the Farmers' Bank, 'as additional and cumulative security,' that there was no such agreement. The only thing in the record approaching or suggesting evidence of this 'further agreement' is found in the letters from Mr. Dunn, attorney for the Farmers' Bank, December 20, 1920, and December 28, 1920, of which of course he had no personal knowledge, a year and four months after the agreement was made, followed by the recitals in the power of attorney by Wingate and the assignment February 8, 1922. It is worthy of note that in his letter to the 'Federal Farm Loan Board,' January 3, 1921, asking for instructions as to assigning the note, Mr. McKinney makes no reference to an agreement that the Land Bank would do so if the loan was

not made. He does, however, refer to the fact that 'other transactions between Wingate and others have been placed of record.' The inference to be drawn from the fact that, 20 days prior to the request to transfer the note, Wingate executed the notes to Smythe Bros. and the mortgage to F. G. James to secure them, recorded December 4, 1920."

We feel that the finding of a trial judge of Judge Connor's experience, who saw and heard the witnesses, should be followed by us; but independently we are entirely convinced that he was correct in his finding of fact in the particulars involved, and that a careful examination of the record will remove the same from any reasonable doubt. This brings us to the two legal questions mentioned above, which will be considered in the order named.

[2] An equitable assignment, based upon a valuable consideration, may be made, and will be enforced by a court of equity, of choses in action, possibilities, expectancies, or of things not in esse, mere contingencies; but it must be made entirely clear from the facts and the entire transaction that an actual transfer and assignment was intended, and this is particularly true in considering such cases and those in which the interests to be affected exist potentially and are to arise under an agreement already made and entered into when the order or assignment is given.

[3] The drawing even of a draft or check upon a deposit in bank or a debt due the drawer, for a part of such deposit or debt, or even the entire amount, in the absence of any circumstances regarded by a court of equity as clearly indicating the purpose to assign such fund, will not be treated as an equitable assignment. No particular phraseology need be used to effect the equitable assignment of the fund to be affected or an interest therein; still the intent to transfer must be manifest, and such intent and its execution are indispensable, and the assignor must not retain any control over the fund, or authority to collect, or any power of revocation. Kendall v. United States, 7 Wall. 113, 19 L. Ed. 85; Christmas v. Russell, 14 Wall. 69, 20 L. Ed. 762; Fourth Street Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. Ed. 855; Bishpam's Eq. (10th Ed.) § 164, note 3; Id. §§ 167, 170; Pomeroy's Eq. (3d Ed.) §§ 1270, 1283.

[4] Considering the case under its own peculiar facts, there would seem to be no doubt that, whatever would have been the rights of the Bank of Greenville, the Land Bank, and Wingate, as between themselves, with respect to the equitable assignment, and the right to require Wingate and the Land Bank to liquidate the amount advanced, or rather to have been advanced, from the proposed loan by the Land Bank to Wingate, had such loan been consummated, that certainly, as between the said two banks and the Southern Stockyards Company, Incorporated, holders under another and superior lien, the doctrine of equitable assignment cannot be invoked to enable the junior lienor to have paid its lien preferentially to that of the prior lienor; and when it is taken into account that the so-called loan from the Land Bank, from the proceeds of which it is claimed the appellant's debt should have been paid by reason of the right of an equitable assignment, was in fact never made at all, and that there was never due any sum whatever from the Land Bank to either Wingate or the Farmers' Bank of Greenville, or to any other person on account of the loan which was not made, and hence there never was any amount in the Land Bank's possession to which an equitable assignment could apply, then the whole basis of the claim attempted to be set up to take precedence over and defeat the Stockyards Company's previous lien must necessarily fall, as the same does not come in, nor can be brought within any of the principles under which courts of equity enforce equitable assignments.

Thus considered, the so-called assignment from Wingate, dated December 28, 1920, whereby he attempted to transfer the note in the Land Bank's hands to the Greenville Bank, can have no effect to alter or change the legal status of the parties so far as this litigation is concerned. And the same is true of the assignment or transfer of the said note by the Land Bank, dated February 8, 1922. The trust deed to James, trustee, securing the Southern Stockyards Company's notes, was dated and recorded on the 4th of December, 1920, some 20 days before the Wingate assignment of December 28, 1920, and some 14 months prior to the assignment of the 8th of February, 1922, from the Land Bank. Moreover, the latter assignment only purported to assign any right, title, and interest which the Land Bank had in and to the said note, which was nothing whatever, since it never made the loan on account of which the note was executed. The Land Bank having failed to make the loan to Wingate, it never became liable to him for any amount, or held on his account any sum subject to his assignment which could be availed

of to liquidate the indebtedness contracted by Wingate with the Farmers' Bank of Greenville in September, 1919.

[5] In considering the claim of the appellant to maintain its right to a lien upon the fund for distribution as superior to, and having preference over, that of the Stockyards Company's by the right of subrogation, the learned judge of the District Court tersely disposed of the contention as follows:

"I am unable to perceive, upon the facts found regarding the claim asserted by the Farmers' Bank by virtue of the equitable assignment, how any right to the proceeds of the sale as against F. G. James, trustee, and Smythe Bros., can be sustained by way of subrogation. The relation of the Farmers' Bank towards Wingate does not bring its claim to the fund, derived from the sale of the lands, within any principle upon which courts of equity invoke and enforce the doctrine of subrogation. This right is but that of substitution, putting the party in whose behalf subrogation is enforced in the position of the party holding the security to which the party seeking subrogation, with the securities held by such party, is entitled. If the Land Bank had no rights, under the deed to the Title & Guaranty Company, it is difficult to perceive how the Farmers' Bank can, by subrogation or substitution, acquire any better position."

We are in full accord with what was said by the trial court respecting the claim to subrogation, and desire to add nothing to what Judge Connor said on that subject as above quoted. The decree will be affirmed, with costs to the appellees.

Affirmed.

Judge WOODS died before the above opinion was prepared.