**Toni KUHN, Greg Kuhn and Mary Kuhn, Appellants (Plaintiffs Below),**

v.

**Charles KUHN and Glenda Kuhn, Appellees (Defendants Below).**

No. 1–878–A–230.

Court of Appeals of Indiana, First District.

Feb. 26, 1979.

Rehearing Denied April 16, 1979.

Goltra Harrison, Columbus, for appellants.

William H. Stone, Cline, King & Beck, Columbus, for appellees.

ROBERTSON, Judge.

Plaintiffs-appellants Toni, Greg, and Mary Kuhn (children) appeal from an adverse judgment in favor of defendants-appellees Charles and Glenola Kuhn.

We reverse.

In pertinent part, the trial court made the following findings of fact and conclusions of law:

1. That Clint N. Bowman was the owner of the following described real estate, to-wit:

\*    \*    \*    \*    \*    \*

That upon his death, pursuant to his last will and testament and the final decree in his estate, dated December 23, 1954, the defendant, Charles Wayne Kuhn, was devised a fee simple remainder interest in said real estate, the same to not vest until he reached the age of 30 years, and subject to a life estate in favor of his mother, Myrl Kuhn.

2. That the defendant, Charles Wayne Kuhn, and Dorothy Kuhn were married in the State of Kansas on July 23, 1950; that they had three (3) children, the plaintiffs, Toni Kuhn, born May 28, 1951, Greg Kuhn, born May 30, 1953, and Mary Kuhn, born April 30, 1955; that all of said children are now adults.

\*    \*    \*    \*    \*    \*

4. That in the year 1964, Charles Wayne Kuhn and Dorothy Kuhn separated, and on December 4, 1964 she filed an action for divorce in the Brown Circuit Court.

5. That during the pendency of the divorce, the parties thereto negotiated a settlement of matters relating to property and support for and custody of children; that the parties agreed, among other things, that Charles Wayne Kuhn would assign a two-thirds (⅔) interest in the property he would receive upon the death of his mother, Myrl Kuhn, to his children, the plaintiffs herein.

6. That on the 13th day of March, 1965, the said Dorothy Kuhn was granted a decree of divorce from Charles Wayne Kuhn;                    .

\*    \*    \*    \*    \*    \*

7. That the attorney for Dorothy Kuhn, Allen E. Goltra, prepared an assignment of interest, which was introduced into evidence herein as Defendants' Exhibit CC, whereby Charles Wayne Kuhn assigned to his children [by Dorothy Kuhn as guardian], "All right, title and interest to two-thirds (⅔) of his entire expectancy in the estate of the said Myrl Kuhn, which the assignor now holds or is entitled to upon the death of the said Myrl Kuhn".

8. That the defendant herein, Charles Wayne Kuhn, knew at said time that he owned the fee in the real estate which his grandfather had devised by his will, but had always represented to Dorothy Kuhn that his mother, Myrl Kuhn, owned said real estate and he would receive it only at her death; that said Dorothy Kuhn relied upon said representation in making arrangements for said assignment.

9. That Dorothy Kuhn signed defendants' Exhibit CC (assignment) before the divorce was granted; that Charles Wayne Kuhn agreed to execute the same, but did not execute it until March 25, 1965, after the divorce was granted.

10. That no mention of said real estate or assignment was made either in the evidence heard in the divorce case or in the decree therein, and the terms thereof were not brought to the attention of the Judge before whom said divorce was heard.

11. That said assignment was executed by Charles Wayne Kuhn because "he wanted his children to have something." That said assignment was executed in behalf of said children by Dorothy Kuhn so that they would receive a two-thirds (⅔) interest in the real estate that Charles Wayne Kuhn would receive upon the death of his mother.

12. That the assignment was not a settlement agreement, but was negotiated during the proceedings relative to the divorce.

13. That said assignment was executed by Charles Wayne Kuhn as a gift in the future for his children.

14. That said assignment was executed by Dorothy Kuhn so that her children would have a two-thirds (⅔) interest in the property of Myrl Kuhn, including real estate, when she died.

15. That there is no evidence that Myrl Kuhn was informed of or consented to said assignment.

16. That said assignment was void as against public policy.

17. That said assignment was a gift to the plaintiffs herein made without adequate consideration.

18. That said assignment cannot be reformed.

## CONCLUSIONS OF LAW

And the Court now states its conclusions of law on the facts found, as follows, to-wit:

1. The law is with the defendants.

2. That the assignment herein was for a mere expectancy, which is void as against public policy unless the ancestor through whom such expectancy may be derived assents to the same.

3. That said assignment being void as against public policy, a court of equity will not lend its aid to reform it.

4. That said assignment cannot be reformed because there was not adequate and full consideration given for the same.

5. That the plaintiffs shall take nothing by their complaint herein.

After the death of his mother, Charles deeded his interest to his second wife Glenola and himself as tenants by the entireties in total disregard of the assignment in issue.

For reasons unknown, and for which the briefs shed little light, the trial court relied heavily on the availability of the doctrine of reformation to "void" and gratuitous transfers. It is clear from the briefs, however, that in declaring the assignment void, the trial court was persuaded by *McClure v. Raben* (1890) 125 Ind. 139, 25 N.E. 179, and its successor *McClure v. Raben* (1892) 133 Ind. 507, 33 N.E. 275. These cases stand for the proposition that an assignment of an

expectant interest in land, *i. e.*, an interest which is not yet vested, *may* be avoided where the ancestor has not consented thereto. The *McClure* decisions were fundamentally based upon the belief that such assignments are wagers and fraught with potential overreaching by the assignee. Such assignments, however, were not held void *per se*: "We are not prepared to say that some case might not arise in which it would be inequitable not to enforce a contract made with an heir for his future prospective inheritance in the estate of his ancestor . . . ." 125 Ind. at 147, 25 N.E. at 182.

These twin cases were limited to their facts, if not impliedly overruled, by *McAdams v. Bailey, et al.* (1907) 169 Ind. 518, 82 N.E. 1057, which involved facts analogous to those at bar. An heir with a vested remainder purportedly transferred his "expectant" interest to certain real estate. Our Supreme Court upheld the transfer as an equitable assignment and that upon realization of the expectancy, the heir/assignor could not be heard to renounce the assignment and claim the land as his own:

> As to *McClure v. Raben, supra*, it is to be observed that that case had to do with an attempted conveyance of the bare expectancy of a son in the real estate of his mother, the absolute fee being in her. The composite of the decisions in said case is that such conveyances are regarded with disfavor, and that the burden is on the grantee to repel an inference of fraud by showing a fair transaction in which a full consideration was paid, and that the consent of the ancestor was obtained. It is scarcely necessary to state that the observations of the court in the decisions last referred to are to be limited to the facts before it, and that in such a case as this, in which the interest or right of the son was fixed by the law, the theory that conveyances of bare expectancies are in fraud of the bounty of the ancestor can have no application.

169 Ind. at 526–7, 82 N.E. at 1060. The Court continued to declare that a court of equity, as a court of conscience, may specifically enforce assignments of expectancies where such a transfer is considered an exec-

utory contract for a transfer of future interests, "[and] common honesty requires that they should be carried out . . . ." *Id.*

■ As the label clearly indicates, an "equitable assignment" is a conveyance recognized by courts of equity where one has conveyed an expectant interest to another, and that the transfer is made binding upon the reliance or other consideration of the assignee as an executory contract. Or, stated differently, where the facts and circumstances are such that equity places a duty to convey upon the assignor, he will be estopped from denying the validity of the transfer. *McAdams, supra*. The facts plainly establish that Charles had a vested interest, that such interest was misrepresented to the children as a mere expectancy, that there was reliance upon the assignment by the children's guardian, and that Charles renounced the transfer to his own personal gain. In a case such as this, Charles was under a duty to convey, and an equitable assignment was created which can be specifically enforced as a binding executory contract in the absence of an affirmative showing by Charles of a countervailing equity, such as fraud.

■ Moreover, Charles should be bound by his bargain for another reason. The assignment herein was clearly executed in the midst of an adjustment of familial obligations. Equity regards such family settlements with favor, and mere inadequacy of consideration will not thwart the operation thereof. *See Eissler v. Hoppel, et al.* (1902) 158 Ind. 82, 62 N.E. 692; *McAdams, supra*. We also add that inadequacy of consideration alone does not vitiate an otherwise voluntary conveyance of a vested or contingent interest in land. *Huffman v. Foreman* (1975) 163 Ind.App. 263, 323 N.E.2d 651.

■ Lastly, we are not unaware of *Hight v. Carr* (1916) 185 Ind. 39, 112 N.E. 881, which purportedly revives the *McClure* holdings. To the extent these cases indicate a contrary result than that which we reach today, we choose to rely on the better

reasoned cases of *McAdams, Eissler,* and *Huffman.* *See also Krick, Executor v. Klockenbrink, et al.* (1968) 144 Ind.App. 55, 242 N.E.2d 848. Collectively, these latter cases recognize that future interests are valuable property rights which may be freely conveyed. The fears in *McClure* have succumbed to the realization that if the heir/assignor can find a ready and willing assignee, there is no reason to presume that the transfer is fraudulent; rather, the assignor may vitiate such a transfer upon establishing unconscionable conduct, of which inadequate consideration is an element to be considered. In any case, a court of equity provides an adequate forum to protect the relative rights of the parties involved. Therefore, we believe the assignment was not void, was not unenforceable for lack of consideration and, even if we assume that consideration was lacking, the conveyance was nonetheless effective to transfer the interest in the property to the children.

Reverse and remanded for proceedings consistent herewith.

LOWDERMILK, J., and YOUNG, J. (sitting by designation), concur.