**C.L. CARR, Ford Carr d/b/a Carr Properties and Thomas M. Kells, Appellants (Defendants),**

v.

**John R. DORENKAMPER, Rita M. Dorenkamper, Robert W. Nolan, Louise Ann Nolan, James W. Andrews and Regina M. Andrews, Appellees (Plaintiffs),**

and

**First Federal Savings and Loan of LaCrosse, Appellee (Third Party Defendant).**

**No. 34A02–8907–CV–373.**

Court of Appeals of Indiana, Second District.

July 16, 1990.

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, P.C., Kokomo, for appellants.

Daniel J. Gamble, Ellis, Gamble & Nolan, Kokomo, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

Defendants-appellants C.L. Carr, Ford Carr d/b/a Carr Properties and Thomas Kells (hereinafter collectively referred to as Carr) appeal from the trial court's judgment in favor of plaintiffs-appellees John and Rita Dorenkamper, Robert and Louise Ann Nolan, and James and Regina Andrews (hereinafter collectively referred to as Dorenkamper) in their action to quiet the title to certain real estate located in Kokomo, Indiana.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment are somewhat complex.

John Huber (Huber) owned the Royal Orleans Apartments (Royal), located in Kokomo, Indiana, subject to three mortgages. On November 9, 1983, Huber conveyed Royal to Carr in exchange for Carr's assumption of Royal's first mortgage, Huber's promise to satisfy Royal's second and third mortgages, and Carr's conveyance to Huber of real and personal property worth, according to Carr, $3,500,000.

Huber defaulted on his promise to satisfy the second and third mortgages, and he also defaulted on a mortgage on a separate parcel of real estate held by Pioneer Savings and Loan Association of Racine, Wisconsin (Pioneer).

In May, 1984, Carr, Pioneer and Huber negotiated among themselves to resolve their claims against Huber. As a result, the three entered into the following transaction: Carr agreed to convey Royal back to Huber; Huber agreed to execute a promissory note in the amount of $1,500,000, secured by a fourth mortgage on Royal, to be held by Pioneer; and Pioneer agreed to either pay Carr $383,777.39 or, if certain conditions[1] did not occur, Pioneer would assign the fourth mortgage to Carr.

On May 23, 1984, Carr conveyed Royal to Huber and Huber executed the promissory note secured by the fourth mortgage, held by Pioneer, which was properly recorded. This mortgage, hereinafter referred to as the fourth mortgage, is the primary focus of this action. After the property had been conveyed and the fourth mortgage recorded, a dispute between Carr and Pioneer arose as to whether the conditions the parties had agreed upon had occurred. Carr asserted the condition had occurred and demanded that Pioneer pay the $383,777.39 as agreed. Pioneer contended the condition had not occurred and offered to assign to Carr the fourth mortgage. Carr refused the assignment of the mortgage and brought suit against Pioneer in Wisconsin.

During the pendency of Carr's action against Pioneer, Huber conveyed Royal to the Wernecke Holding Company (Wernecke), a previous owner of Royal and the holder of Royal's third mortgage. Wernecke was interested in clearing Royal's title and was negotiating with St. Joseph's Bank and Trust Company of South Bend (St. Joseph's) (the holder of Royal's second mortgage) to clear the second mortgage on Royal.

---

1. The conditions included the delivery to Pioneer of certain gems valued at approximately $1,000,000 to be used as collateral for other loans.

Carr was contacted by St. Joseph's and was offered a release of some mortgages St. Joseph's held on other property Carr owned if Carr would quitclaim any interest Carr held in Royal to Wernecke. At the time, Carr had not accepted Pioneer's assignment of the fourth mortgage and had previously conveyed Royal to Huber. Carr agreed to St. Joseph's proposal and on March 27, 1985, Carr conveyed a quitclaim deed of Royal to Wernecke.

Wernecke contacted Pioneer, but Pioneer refused to release the fourth mortgage and informed Wernecke that it intended to assign the fourth mortgage to Carr. Pioneer also refused on the basis that it thought a release of the fourth mortgage would prejudice it in its litigation with Carr. Carr also refused various requests by Wernecke to release the fourth mortgage.

Wernecke eventually obtained releases of Royal's first three mortgages, obtained a new mortgage on Royal, and eventually Royal was conveyed to Dorenkamper (the Appellees) on April 12, 1985.

On August 21, 1985, Carr's litigation with Pioneer was concluded with a judgment in favor of Pioneer. Carr appealed, and on November 5, 1986, the Wisconsin Court of Appeals affirmed the lower court's ruling favoring Pioneer.

On July 22, 1987, Dorenkamper instituted the present action to quiet Royal's title. Carr then demanded that Pioneer assign the fourth mortgage pursuant to their agreement, and Pioneer assigned Carr the fourth mortgage in May of 1988. Pioneer was dismissed from Dorenkamper's quiet title action, and Carr filed a third party claim against the holder of Royal's latest mortgage seeking to establish the priority of the fourth mortgage over Royal's last mortgage.

After a bench trial, the trial court issued its judgment on April 10, 1989. The trial court quieted title in Dorenkamper's favor and gave three alternate grounds for its decision, including a determination that the fourth mortgage was void for lack of con-

sideration. The portion of the trial court's judgment most relevant to our resolution of this appeal provided:

### "II

On March 27, 1985, the Defendant, C.L. Carr executed a Quitclaim Deed whereby he released and quitclaimed to Dale A. Wernecke the subject property (Exhibit 14). There was no dispute as to the validity of the Quitclaim Deed by the parties.

The form required of a Quitclaim Deed was met. In considering all the evidence submitted, the Court finds that it was the intention of the parties in preparing and executing the Quitclaim Deed to release all of C.L. Carr's interest in the real estate and mortgage by the execution of the said Deed.

The Court further finds from the evidence that the Quitclaim Deed conveyed whatever right the Defendant, C.L. Carr had in the Royal Orleans Apartments, and the subject mortgage, or the assignment of the mortgage to Dale A. Wernecke. Accordingly the Defendants have no interest in the subject real estate."

*Record* at 420.

We recapitulate the essential facts: Carr had a contractual right to either $383,777 or the assignment of the fourth mortgage from Pioneer, depending upon certain contingencies. Wernecke obtained a quitclaim deed to Royal from Carr before Carr accepted the assignment of the fourth mortgage from Pioneer. Dorenkamper, Wernecke's eventual grantee, sought to quiet Royal's title and the trial court determined, among other things, that Carr's interest in the fourth mortgage passed to Wernecke by virtue of the quitclaim deed, and quieted Royal's title in Dorenkamper's favor.

### ISSUE

While Carr raises several issues for our consideration, one issue is dispositive:[2]

Whether the trial court erred when it

---

**2.** Carr also argues the trial court erred when it determined the fourth mortgage was void for lack of consideration. Because we affirm the trial court's judgment on another basis, we need not reach this issue.

determined Carr's interest in the fourth mortgage had been conveyed to Wernecke by the quitclaim deed Carr executed on March 27, 1985?

## DECISION

PARTIES' CONTENTIONS—Carr argues that the trial court erred when it determined any interest Carr owned in the fourth mortgage had been transferred to Wernecke by the quitclaim deed executed on March 27, 1985, because, at the time of the execution, Carr had no interest in the mortgage. In the alternative, Carr asserts that an interest in a mortgage cannot be transferred by a quitclaim deed because a mortgage is merely a lien upon property, not a claim of title. Dorenkamper responds that mortgage interests are assignable by quitclaim deed and contends that Carr had a contractual right to the assignment of the fourth mortgage which was capable of being conveyed by quitclaim deed.

CONCLUSION—Carr's contingent contractual interest in the fourth mortgage passed to Wernecke by the quitclaim deed.

Sorting through the complexity of this case has left us somewhat breathless, but content that the ancient doctrine of equitable assignment rescues us from the labyrinth.

We can conclude that even if the trial court erred when it determined the fourth mortgage was void for lack of legal consideration, as Carr claims, the trial court properly determined any interest Carr had in the fourth mortgage was conveyed to Wernecke by the quitclaim deed executed on March 27, 1985. Whether the quitclaim deed was legally sufficient to transfer Carr's interest to Wernecke is of no moment because the trial court's order unmistakably establishes that the transaction between Carr, Wernecke and St. Joseph's amounted to an equitable assignment of Carr's interest in the fourth mortgage to Wernecke.

The doctrine of equitable assignment has a long and distinguished history in Indiana.

*Eissler v. Hoppel* (1902), 158 Ind. 82, 62 N.E. 692; *McAdams v. Bailey* (1907), 169 Ind. 518, 82 N.E. 1057; *Kuhn v. Kuhn* (1979), 179 Ind.App. 441, 385 N.E.2d 1196, *trans. denied; Huffman v. Foreman* (1975), 163 Ind.App. 263, 323 N.E.2d 651; *Krick v. Klockenbrink* (1968), 144 Ind.App. 55, 242 N.E.2d 848, *trans. denied.* This court in *Kuhn,* aptly described an equitable assignment:

"[A]n 'equitable assignment' is a conveyance recognized by courts of equity where one has conveyed an expectant interest to another, and that the transfer is made binding upon the reliance or other consideration of the assignee as an executory contract. Or, stated differently, where the facts and circumstances are such that equity places a duty to convey upon the assignor, he will be estopped from denying the validity of the transfer."

*Kuhn, supra* 179 Ind.App. at 445, 385 N.E.2d at 1199.

While no Indiana cases have applied this doctrine to the assignment of mortgage interests, courts in numerous jurisdictions have recognized that mortgages may be equitably assigned. *Farmers Bank of Greenville v. Blount* (4th Cir.1925), 8 F.2d 443; *Tilden v. Beckmann* (1979), 203 Neb. 293, 278 N.W.2d 581; 59 C.J.S. *Mortgages* § 360 (1949).

In this connection, the Nebraska Supreme Court, in *Tilden,* observed:

"The rule is well established that since equity disregards mere form, no particular words or particular form of instrument is necessary to effect an equitable assignment, but any language, however informal, if it shows the intention of the ·owner of a chose in action to transfer it, so that it will become the property of the transferee, will amount to an equitable assignment."

*Tilden, supra* at 300, 278 N.W.2d at 586.

The trial court explicitly determined that the intent of the quitclaim deed from Carr to Wernecke was to release Carr's interest in the fourth mortgage. *Record* at 420. The quitclaim deed was supported by consideration, as St. Joseph's released its inter-

est in several mortgages it held on other property owned by Carr in exchange for the quitclaim deed. *Record* at 994–95, 1012–13. We thus conclude Carr is bound by the equitable assignment irrespective of the legal significance of the quitclaim deed. *Blount, supra; Tilden, supra.* Carr's interest in the fourth mortgage was transferred to Wernecke and title to Royal was properly quieted in Dorenkamper.

As to Carr's claim that he had no interest in the fourth mortgage to transfer at the time he executed the quitclaim deed, Carr, in fact, had a contractual right to the fourth mortgage which was contingent on the conditions contained in the agreement. This contingent contractual right was subject to alienation. The court in *Blount, supra,* recognized:

"An equitable assignment, based upon a valuable consideration, may be made, and will be enforced by a court of equity, of choses in action, *possibilities, expectancies, or of things not in esse, mere contingencies;* but it must be made entirely clear from the facts and the entire transaction that an actual transfer and assignment was intended, and this is particularly true in considering such cases and those in which the interests to be affected *exist potentially and are to arise under an agreement already made and entered into when the order or assignment is given.*"

*Id.* at 446 (emphasis supplied).

So the trial court's judgment is sustainable on the basis of an equitable assignment and we need proceed no further. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154.

Judgment affirmed.

SHIELDS, P.J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I have no quarrel with the attempt by the majority to achieve a fair result by application of the doctrine of equitable assignment in the case before us. As correctly stated by the majority, Indiana has long recognized the doctrine even with respect to an expectant interest. I further

see no reason why the doctrine may not be applied to transfers of mortgage interests in real estate.

The problem with the case before us, however, is that, according to the majority, the transfer of Carr's interest in the fourth mortgage occurred by virtue of the quitclaim deed executed to Wernecke on March 27, 1985. At that point in time, Carr had only an expectation of one of two alternatives flowing from Pioneer. He had no interest, contractual or otherwise, in the fourth mortgage unless Pioneer chose not to pay Carr the $383,777.39. His arrangement with Pioneer was that Pioneer could either pay the amount *or* assign the fourth mortgage to Carr. Only after resolution of the Wisconsin litigation in 1986 could Carr assert even an expectant present interest in the fourth mortgage. The mortgage assignment was not in fact made until May, 1988. The decision of the majority would seem to require a determination that had Pioneer exercised its option to utilize the cash payment alternative, the quitclaim deed would be just as effective in assigning the right to the $383,777.39 amount as it was in conveying the contingent, expectant interest in the fourth mortgage. I do not believe the law of conveyances with respect to interests in real estate permits the analysis used by the majority even though the result achieved is seemingly fair.

As stated in *Kuhn v. Kuhn* (1979) 179 Ind.App. 441, 385 N.E.2d 1196, an equitable assignment of an expectant interest by virtue of a conveyance is a form of estoppel by deed. It serves to preclude the grantor from denying the validity of the transfer. However, estoppel by deed with regard to an after acquired interest has no application where the grantor conveys by quitclaim deed. 6A Powell on Real Property § 901[2] (1990).

A quitclaim deed conveys only such right, title and interest as the grantor may have, if any, at the time of the conveyance. *Bryan v. Uland* (1885) 101 Ind. 477, 1 N.E. 52; *Enderle v. Sharman* (1981) 1st Dist. Ind.App., 422 N.E.2d 686. *See Haskett v. Maxey* (1893) 134 Ind. 182, 33 N.E. 358,

modifying *Bryan v. Uland, supra,* but upon other grounds.

Under the law of most states, a warranty deed which purports to convey a mere expectancy is void and transfers nothing. Therefore it is also incapable of transferring any interest by estoppel. 6A Powell on Real Property, *supra.* Even in jurisdictions which hold that a quitclaim deed is evidence of an intent to convey some interest and that a grantor may be estopped, such principle has no application to an expectancy not the subject of conveyance. Thompson on Real Property § 2522, p. 518 (1979 Repl.).

In *Farmers' Loan and Trust Company v. Wood* (1922) 78 Ind.App. 147, 134 N.E. 899, the trustee held a sum of money which resulted from the sale of real and personal property in an estate. Prior to the death of the decedent, Wood, an heir to the estate, had "convey[ed] and quitclaim[ed]" certain real estate and personal property. The instrument further provided that the trustee was "to take any and all property that may hereafter come to [grantor] by descent or devise...." 78 Ind.App. at 149, 134 N.E. 899. The court held:

> "that in so far as the deed in question relates to the money involved in this action, [Wood] was attempting to assign or convey a mere expectancy. It is settled law in this state, and so recognized by text writers, that such a contract is against public policy, and hence inoperative, unless the ancestor through whom such expectancy may be derived, assents to the same." 78 Ind.App. at 150, 134 N.E. 899.

It is clear, therefore, that the instrument here involved could not serve as an equitable assignment of the contingent expectancy of the $383,777.39 to be received if and only if Pioneer chose that alternative instead of the mortgage assignment. For the same reason, I would hold that the alternative contingent expectancy of the mortgage assignment was not transferred or transferable in the 1985 deed.

In *McAdams v. Bailey* (1907) 169 Ind. 518, 82 N.E. 1057, the court found an estoppel to exist but did so based upon a covenant of warranty in the instrument. The court however acknowledged the basic rule that a "mere quitclaim deed ... not purporting to convey any particular interest, would have been ineffectual to convey [the grantor's] possible future interest...." 169 Ind. at 521, 82 N.E. 1057. To the same effect is *Buckel v. Auer* (1918) 68 Ind.App. 320, 120 N.E. 437, which recited the general rule but acknowledged an exception if the quitclaim deed contains a clearly expressed intent to convey a specifically described and identified interest.

The quitclaim deed here involved does not contain such specificity or expressed intent. It purports only to "Release and Quit–Claim ... a part of" the real estate legally described. Record at 523. For this reason, I am of the considered opinion that Wernecke did not acquire any interest in the fourth mortgage by virtue of Carr's quitclaim deed.

Because it would serve no useful purpose with regard to the result obtained in this appeal for me to discuss the other assertions of error advanced by Carr, I choose not to do so. My dissent is premised solely upon the single issue addressed by the majority. I do not opine whether there may be some other basis upon which to sustain the decision of the trial court.