**In the Matter of the Mental Commit-
ment of Timothy TARPLEY,
Appellant (Respondent Below).**

No. 49A02–9004–CV–219.

Court of Appeals of Indiana,
Fourth District.

Feb. 5, 1991.

Kenneth J. Falk and Lisa R. Hayes, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

William E. Daily, Deputy Atty. Gen., Office of Atty. Gen. and J. Michael Grubbs, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellees.

CONOVER, Judge.

Respondent–Appellant Timothy Tarpley (Tarpley) appeals an order from the Marion County Municipal Court. He also appeals a contempt conviction arising from a hearing before the court.

We affirm.

Tarpley raises the following consolidated and restated issues:

1. whether the trial court erred in ordering Tarpley to take medication; and

2. whether the trial court erred in finding Tarpley in contempt for refusing to take medication as ordered.

Tarpley is a thirty-three year old resident of Indianapolis with a history of dangerous behavior due to chronic paranoid schizophrenia. He was originally committed on January 8, 1987, as an outpatient at Midtown Community Health Center (Midtown), after the court found he was gravely disabled.[1] He was committed as an outpatient on the condition he take all medications as prescribed, attend all clinic sessions, and refrain from abusing drugs or alcohol.

Tarpley began violating the conditions of his commitment almost immediately. He frequently refused to take medication, and informed the court and Midtown of the refusals. During the course of his commitment several proceedings took place regarding these refusals. On one occasion the court initially held him in contempt, but upon finding he was psychotic, purged his record of contempt. Upon this finding, the court converted his commitment to inpa-

---

1. "Gravely disabled" means a condition in which a person as a result of mental illness is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

IND.CODE 16–14–9.1–1(b).

tient status for the purpose of insuring he take his medication.

Tarpley was discharged from the inpatient unit on February 11, 1987, but again failed to take required medication. On March 20, 1987, he was found in contempt for not taking it, and was sentenced to ten days in the Marion County Jail. The sentence was suspended when he agreed to take his required medication.

The court's coercive approach secured Tarpley's compliance with the medication schedule recommended by Midtown and ordered by the court. As a result, Tarpley was able to function in the least restrictive environment necessary to prevent harm to himself and others. Even though his commitment was continued in January of 1988, the court saw no need to place him on the more restrictive inpatient status since his compliance with the court ordered conditions made it possible for him to function outside the confines of a mental institution.

During the next several months, Tarpley's capacity to function reached its highest point in the history of his commitment. He held a regular job as a data entry operator, maintained his own apartment, and took classes.

His commitment was again extended in January of 1989. However, in September of 1989, the court was forced to hold a commitment review hearing after Midtown reported Tarpley was missing clinic appointments. After finding Tarpley presented a danger to himself and others, the court continued Tarpley's commitment. It also ordered Midtown to re-evaluate Tarpley's medication needs, investigate his complaints regarding the effects of overmedication, and submit a new treatment plan.

In October of 1989, Midtown filed a new treatment plan recommending continued medication every four weeks during clinic visits. By this time, however, Tarpley had decompensated and was no longer able to work. On October 24, 1989, Midtown reported Tarpley was refusing to take medications and was decompensating further. On October 25, 1989, a Mental Health Summons was issued to Tarpley. The summons warned that a proceeding for commit-

ment had been instituted which could result in commitment as an inpatient at a mental health facility.

On the same date, the trial court also issued an "Order Setting Hearing for Show Cause", which set a hearing date. The order further stated:

> The hearing shall determine if the patient is mentally ill and dangerous or is mentally ill and gravely disabled (as those terms are defined in IC 16–14–9.1) and if so, to which facility the patient shall be recommitted. The Court will also hear evidence upon other matters pertaining to the patient's care and treatment if any such matters are brought to the Court's attention at the hearing.

(R. 89). It also appointed an attorney to represent Tarpley at the hearing.

The hearing was continued until December, 1989. On December 28, a hearing was held in which the trial court found "the evidence is very convincing that Mr. Tarpley is mentally ill, that [if] Mr. Tarpley is not treated [he] is going to relapse and if he does relapse he could act out in a dangerous manner." (R. 235).

The court heard uncontroverted testimony which established the least restrictive treatment for Tarpley would be to continue to allow him to function as an outpatient, while requiring him to take medication. The only other viable alternative was to commit Tarpley to a mental facility as an inpatient. The court informed Tarpley he was to continue to take medication, and his outpatient status depended on his compliance with the court's order to take medications. The court further indicated that any failure upon Tarpley's part to take medication could result in contempt findings and incarceration or commitment as an inpatient. The court then directly ordered Tarpley to take medication, and in response to questions from Tarpley's attorney, stated failure to take medication could result in a finding of contempt.

After the hearing adjourned, the parties left the courtroom and congregated outside the judge's chambers. While outside chambers, Tarpley said he would not comply

with the court's order. Tarpley, his counsel, and counsel for Midtown reentered the courtroom. There, the following discussion ensued:

THE COURT: Mr. Tarpley?

MR. TARPLEY: I was told by the Doctor and Joy Bennett that I had to tell you. Medicine is out, and seeing that I have not disobeyed court orders to appear here are [sic] anything and you're sending me to jail for not taking medication . . .

THE COURT: No I am not sending you to jail I just told you to go downstairs and take your medication, now if you are telling me that you are not going to take your medication then ask the Doctor. Is there any other way we can do this Doctor?

DR. SCHMETZER: Your Honor I know of no other besides the medication is going to be helpful as a part of Mr. Tarpley's treatment program, that's why we are here today.

THE COURT: Mr. Hiland [Tarpley's attorney], do you have any suggestions?

MR. HILAND: Your Honor I have talked with Mr. Tarpley both before and after the hearing. I understand Tim's position as to the issue, I believe he understands the consequence of his decision, I believe it is a voluntarily [sic] and knowingly [sic] decision. For what it is worth I concur with his decision.

THE COURT: All right, Court at this time finds Mr. Tarpley in contempt, Mr. Tarpley will go to jail and he will remain there until he purges himself of the contempt.

(R. 245–247).

Tarpley continued to refuse medication while he was in jail. He was released from jail on January 25, 1990, on the condition he continue his commitment as an outpatient. On the same date, he filed a praecipe for a transcript of the record.

Tarpley contends the trial court erred when it ordered him to take his medication or suffer the consequences. He contends that under *In re Mental Commitment of M.P.* (1987), Ind., 510 N.E.2d 645, the court has only the authority to allow Midtown to forcibly medicate, not to require Tarpley to take the medication. We disagree.

The issue before our supreme court in *Commitment of M.P.* was whether M.P. could be forcibly medicated. The court determined a trial court could override a patient's statutory right to refuse treatment when clear and convincing evidence showed: 1) a current and individual medical assessment of the patient's condition had been made; 2) the assessment resulted in the honest belief of the psychiatrist that the medications would be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual; and 3) the probable benefits from the proposed treatment outweighed the risk of harm to, and personal concerns of, the patient. *Id.*, at 647. When a trial court finds the necessary evidence is present, it can then order the patient to be forcibly medicated.

Here, Tarpley does not attack the sufficiency of the evidence supporting the court's authority to require him to take the medication, but only questions the court's method of insuring the medication is taken. Stated differently, Tarpley contends once the need for medication is established, *Commitment of M.P.* gives the trial court only the option of allowing the treatment facility to forcibly administer medication, and not the option of ordering the patient to take medication.

Once the court has found the evidence is sufficient to establish the necessity of medication, the goal of the trial court in reviewing treatment plans is to insure the least restrictive reasonable treatment be selected and implemented. *Commitment of M.P.*, at 647. The least restrictive reasonable treatment is treatment which restricts the patient's liberty to the least degree possible, and yet, is still workable. *Id.* In the present case, after finding sufficient evidence warranting the medication schedule, the trial court had three treatment alternatives. It could convert Tarpley's commitment to inpatient status and order medication be forcibly given. It could order Tarpley remain an outpatient,

and show up for periodic forced medications. Finally, it could order Tarpley to take medication or suffer the consequences. The first alternative was clearly the most restrictive. While the second alternative was arguably less restrictive, it was unreasonable to believe Tarpley would voluntarily show up at the clinic to be subjected to injections of medication he did not want. Accordingly, the least restrictive reasonable alternative was the one taken by the trial court. This is especially true in light of the success of this approach in the past.

In *Commitment of M.P.*, the supreme court discussed forcible medication because it was the alternative chosen by the trial court. Here, the court did not err in choosing a less intrusive option.[2]

Before deciding the issue of whether Tarpley's contempt conviction was proper, we must address the assertion made by Midtown and the State that the issue is moot. Midtown and the State cite *Wools v. Reberger* (1935), 209 Ind. 99, 198 N.E. 65, in support of their contention. In *Wools*, our supreme court established a general rule when it held an appeal of a civil contempt conviction is moot where the appellant has already complied with the court's order and has been discharged from custody. They also cite *N.J.R. v. State* (1982), Ind.App., 439 N.E.2d 725, 727, for the proposition the trial court must be affirmed because there is no "effective or practical means of remedying the violation of rights at this time."

■ An issue is deemed moot when it is no longer "live" or when the parties lack a legally cognizable interest in the outcome of its resolution. *Bartholomew County Hospital v. Ryan* (1982), Ind.App., 440 N.E.2d 754, 757. Accordingly, where the principal questions at issue cease to be of real controversy between the parties, the "errors assigned become moot questions and this court will not retain jurisdiction to decide them." *Id.* Thus, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination "where absolutely no change in the status quo will result." *Id.*

■ However, there is an exception to the general rule. A public interest exception may be invoked upon the confluence of three elements: 1) the issue involves a question of great public importance; 2) the factual situation precipitating the issue is likely to recur; and 3) the issue arises in a context which will continue to evade review. *In re Marriage of Stariha* (1987), Ind.App., 509 N.E.2d 1117, 1123 (*citing Bartholomew, supra,* at 759).

■ The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society. Indiana statutory and case law affirms the value and dignity of the individual facing commitment or treatment is of great societal concern. *See* IND.CODE 16–14–1.6–7; *Commitment of M.P.*, 510 N.E.2d at 646. Here, Tarpley was incarcerated and released long before his case could be reviewed by this court, and the possibility of review ever occurring prior to the expiration of his incarceration for possible and probable future contempts is practically nonexistent. The problem will continue because of the trial court's necessary practice of finding involuntarily committed individuals in contempt for failure to follow court orders. The issue raised by Tarpley fits within the public interest exception. We examine the issue even though no practical remedy is available.[3]

---

**2.** In *State ex rel. Kiritsis v. Marion Probate Court* (1978), 269 Ind. 550, 381 N.E.2d 1245, our supreme court held a trial court with jurisdiction over involuntary commitment proceedings has the authority to use its contempt power to force compliance with its orders. We find this case supports our decision here. In so doing, we reject Tarpley's contention that *Kiritsis* should be interpreted as a "sanctions" case in reference to failure to comply with discovery. The court was explicit in its discussion of the trial court's authority in involuntary commitment proceedings.

Furthermore, our decision is supported by IC 16–14–9.1–20.5(c), which gives the court the authority to require an outpatient to follow the therapy program set up for him.

**3.** In *N.J.R., supra,* we examined the issue involved even though we did not have any effective means of remedying the violation of N.J. R.'s rights.

Tarpley contends the trial court denied him due process of law in summarily finding him in contempt of court. In making this contention, Tarpley attempts to show his refusal to follow the court's order did not constitute direct criminal contempt, and could not be punished as civil contempt because of the court's alleged failure to follow proper procedure. Tarpley further contends that even if the court was warranted in summarily finding him in contempt, it erred in failing to properly document his contempt and failing to hold a hearing to determine whether or not his refusal to follow the court's order was a manifestation of his mental illness.

■ Tarpley places great emphasis on the category in which his refusal should be placed. Contempts may be categorized as either civil or criminal. *Hegedus v. Hegedus* (1978), 178 Ind.App. 620, 383 N.E.2d 446, 447 n. 1. Generally, civil contempt is an offense against the party in whose behalf the court's mandate was issued, while criminal contempt is against the court and is punished by fine or imprisonment. *Id.* The United States Supreme Court has held contempts can be categorized by the nature of the result, i.e. coercive fines or incarceration indicate civil contempt while punitive fines or incarceration indicate criminal contempt. *Hicks v. Feiock* (1988), 485 U.S. 624, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721. However, contempt is essentially *sui generis*, and these categorizations, although useful in determining due process requirements in certain situations, should not be used to obfuscate the actual issue. *See*, 6 I.L.E. *Contempt* § 1.

■ The record in the present case shows the trial court carried on a discussion with Tarpley and his attorney in the initial hearing and the judge gave notice that refusal to follow his order would be considered direct contempt if done in the court's presence. The parties then left the courtroom and Tarpley indicated he would not follow the court's order and take his medication. Tarpley and his attorney then voluntarily came back into court and Tarpley unequivocally refused to take the medication. When the court inquired of Tarpley's attorney as to what the court should do, Tarpley's attorney indicated Tarpley voluntarily and knowingly refused to comply. No matter what category Tarpley's refusal falls under, the court did not violate due process since Tarpley had notice and was given an opportunity to defend his noncompliance upon his voluntary return to the courtroom. When a contemnor *voluntarily* comes back into court to make his refusal directly known, and indicates upon questioning by the court that his refusal is willful, voluntary, and knowing, thus implying he has no legal defense justifying refusal, the court does not violate due process in immediately finding him in contempt.[4]

■ Assuming *arguendo* that a written statement was necessary, we find the trial court's statement sufficient. The purpose of the statement is to provide the contemnor with a record for appeal which shows precisely why he was found in contempt and to deter "arbitrary and rash action on the part of the trial judge." *Skolnick v. State* (1979), 180 Ind.App. 253, 388 N.E.2d 1156, 1163, *cert. denied* 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323. Where, as here, the contemptuous conduct is clear from the transcript, and the contemnor "has not shown how he has been harmed by the absence [incompleteness] of a written statement", reversal of the contempt conviction is not warranted.

■ Tarpley contends the trial court erred in not making an express finding whether his conduct was a manifestation of his mental illness for which he could not be

---

**4.** Tarpley cites to *Bottoms v. B & M Coal Corporation* (1980), Ind.App., 405 N.E.2d 82, *rev'd on other grounds, B & M Coal Corporation v. United Mine Workers* (1986), Ind., 501 N.E.2d 401, for the proposition that a trial court should not predetermine the penalty for noncompliance with its order. Tarpley's reliance on *Bottoms* is misplaced. In *Bottoms,* we found the trial court erred because it issued an order which anticipated the breach, assessed the penalty, and provided for execution, without allowing the noncomplying party an opportunity to present reasons for failure to comply. In the present case, Tarpley was given the chance to present a defense for his refusal to follow the trial court's order.

held responsible. Tarpley further contends the record shows his mental illness prevented him from willfully refusing to follow the trial court's order.

In *McNeil v. Director, Patuxent Institution* (1972), 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719, the United States Supreme Court held:

> For if confinement is to rest on a theory of civil contempt, then due process requires a hearing to determine whether petitioner has in fact behaved in a manner that amounts to contempt. At such a hearing it could be ascertained whether petitioner's conduct is willful or whether it is a manifestation of mental illness, for which he cannot fairly be held responsible. Civil contempt is coercive in nature, and consequently there is no justification for confining on a civil contempt theory a person who lacks the present ability to comply. 407 U.S. at 250–251, 92 S.Ct. at 2087–2088. (Internal citations omitted).

In *Kiritsis, supra*, our supreme court cited *McNeil*, and stated due process was served when the trial court held a hearing on the contempt charge to determine whether the defendant's conduct was willful and not a manifestation of mental illness for which he was not responsible. 381 N.E.2d, at 1248.

In the present case, Tarpley's attorney expressly stated Tarpley's refusal to follow the trial court's order was willful, voluntary, and knowing. We do not agree with appellant counsel's contention that the trial court's finding that Tarpley required medication as an outpatient leads inescapably to the conclusion he could not be held responsible for his contempt. We see no need for the trial court to conduct an additional hearing on an issue already conceded by trial counsel. The trial court's finding of contempt was an obvious agreement with trial counsel's assessment of Tarpley's blameworthiness for the contempt.

Affirmed.

BUCHANAN, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The majority has reached an understandable and even perhaps Solomon-like result in this matter. *See Carr v. Dorenkamper* (1990) 2nd Dist.Ind.App., 556 N.E.2d 1333, *trans. denied.* To be sure, the order to Tarpley to take medication, while continuing in an out-patient status is less restrictive and invasive than forcible medication under an involuntary commitment as an in-patient. Nevertheless, it is within the qualified right and prerogative of the individual to refuse such medication. Further, in my view, an order to the patient compelling him to take medication may not, under existing law, be enforced in the manner utilized by the trial court, if at all.

I have little, if any, doubt that the proceeding resulting in Tarpley's incarceration was a direct civil contempt proceeding. The trial court specifically stated that the purpose of the contempt finding and the jailing of Tarpley was not to punish, but was to coerce compliance. This is the hallmark of civil contempt.

Even were it otherwise, and if Tarpley's statement in open court that he intended to disregard the order be construed as an affront to the dignity and decorum of the court, the sanctions which might be imposed do not include indefinite and coercive incarceration. Although I.C. 34-4-7-6 (Burns Code Ed.Repl.1986) setting forth the permissible punishments for contempt, was repealed effective September 1, 1987, the present law does not contemplate an indefinite period of incarceration. *In The Matter of Craig* (1990) 2nd Dist.Ind.App., 552 N.E.2d 53.

Be that as it may, a defendant in a contempt proceeding, as here, must be afforded an opportunity to prepare and be heard in his own defense. He must be permitted to show justification, legal and/or factual, for his failure or refusal to comply; or at least to demonstrate that the failure or refusal was not, in its nature or manner, willful or contumacious. Such demonstration would be accomplished by evidence that refusal was the product of the mental illness itself. *State ex rel. Kir-*

*itsis v. Marion Probate Court* (1978) Ind., 381 N.E.2d 1245.

Counsel for Tarpley represented to the trial court that his client "understands the consequence of his decision. I believe it is a [voluntary and knowing] decision." Record at 245. This representation connotes only that Tarpley was aware that he might go to jail for not taking the medication. It does not disclose that Tarpley was acting freely, and with the requisite mental capacity. It does not exclude the very real possibility, if not probability, that the refusal was induced by Tarpley's severe delusions and withdrawal from reality. In fact, there was medical evidence that reluctance and refusal to take medication is a common manifestation of the particular mental illness here involved. From this evidence and from the fact that Tarpley was not taking the medication, the only reasonable inference is that he was not acting willfully or in a conscious attempt to unjustifiably thwart the judicial process. In any event, the trial court's contempt determination was somewhat less deliberative than it might have been.

Our Supreme Court has clearly held that the right of a person to refuse medication may be abrogated and forcible medication administered. Such invasion is permissible only if shown by clear and convincing evidence to be required for the treatment of the patient. This need must be carefully balanced against the patient's presumptive right to the integrity of his person. *In Re Mental Commitment of M.P.* (1987) Ind., 510 N.E.2d 645 (opinion on transfer modifying *In Re Mental Commitment of M.P.* (1986) 2nd Dist., Ind.App., 500 N.E.2d 216 as to the standards and procedures under which a mental patient may be forcibly medicated). No case, however, has held or intimated that the alternative approved by the majority here fits within the statutory or constitutional framework which otherwise governs the rights and obligations of the parties involved. Accordingly, although the result reached today is perhaps

an acceptable solution to the problem, it is not in my estimation within the present legal prerogative of the judicial system.[1]

For the reasons set forth, I dissent. I would reverse and remand with instructions to vacate the contempt judgment.

---

1. It may be noted that the majority result here, contemplates the confinement of the patient in a jail or other penal setting as opposed to a more appropriate mental health medical facility. If the ultimate goal is to medicate the patient, that would seem to be more appropriately done as an in-patient and as authorized by present Indiana case law.